UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

AJAY BAHL,

                            Plaintiff,

           -against-

NEW YORK COLLEGE OF OSTEOPATHIC
MEDICINE OF NEW YORK INSTITUTE OF
TECHNOLOGY ("NYCOM-NYIT" or "NYCOM");
THE NATIONAL BOARD OF OSTEOPATHIC
MEDICAL EXAMINERS ("NBOME");
and NORTH SHORE LONG ISLAND JEWISH
PLAINVIEW HOSPITAL ("NS-LIJ"),

                        Defendants.

-------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 14-4020

(Wexler, J.)

APPEARANCES:

       KEVIN T. MULHEARN, ESQ.
       BY:    Kevin T. Mulhearn, Esq.
       Attorney for Plaintiff
       60 Dutch Hill Road, Suite 8
       Orangeburg, New York  10962

       NORTON ROSE FULBRIGHT US LLP
       BY:    Douglas P. Catalano, Esq.
               Neil G. Sparber, Esq.
               Samantha Beltre, Esq.
       Attorneys for Defendant New York Institute of Technology
       666 Fifth Avenue
       New York, New York  10103

       NIXON PEABODY LLP
       BY:    Christopher G. Gegwich, Esq.
               Alexander E. Gallin, Esq.
       Attorneys for Defendant Plainview Hospital
       50 Jericho Quadrangle, Suite 300
       Jericho, New York  11753

WEXLER, District Judge:

Before the Court are motions to dismiss Plaintiff's Complaint by Defendants National Board of Osteopathic Medical Examiners ("NBOME") and Plainview Hospital (the "Hospital), sued herein as North Shore Long Island Jewish Plainview Hospital. In opposition to the within motions, Plaintiff, without leave of Court, cross-moves to amend his Complaint to add new causes of action against Plainview Hospital and Defendant New York Institute of Technology ("NYIT"), sued herein as New York College of Osteopathic Medicine of New York Institute of Technology. Both Plainview Hospital and NYIT oppose Plaintiff's motion to amend.[1]

Despite the procedural violation of Plaintiff's motion, the Court will allow the motion to amend the Complaint and will address it first. For the following reasons, Plaintiff's motion to amend the Complaint is granted in part and denied in part.

## BACKGROUND

In July 2008, Plaintiff, Ajay Bahl ("Bahl" or "Plaintiff"), an individual who suffers from a myriad of attention-deficit, speech, reading, language and anxiety-related disabilities, commenced studies in Defendant NYIT's four-year osteopathic medicine program. (Proposed Am. Compl. ¶¶ 10-11.) Plaintiff completed his first two years of course work at NYIT without incident, passing all of his classes. (Id. ¶¶ 10, 12.)

In July 2010, upon Plaintiff's successful completion of his second year of studies at NYIT, Plaintiff was required to take his first Comprehensive Osteopathic Medical Licensing

---

[1] NYIT did not file a motion to dismiss Plaintiff's Complaint, instead filing an Answer. NBOME, who has a motion to dismiss pending, does not oppose Plaintiff's motion to amend the Complaint.

Examination, Level 1, known as the "COMLEX I" examination, which is the first of a series of three cognitive exams that NYIT students are required to pass. (Id. ¶ 13.) The COMLEX I is a full-day, eight-hour examination administered by Defendant NBOME consisting of 400 computerized, multiple choice questions, given in two sections of four-hour blocks, separated by a forty-minute break. (Id.) Plaintiff failed the COMLEX I exam on his first attempt. (Id.) Pursuant to the NYIT student handbook, Plaintiff commenced a "COMLEX I Mandatory Administrative Leave of Absence." (Id.)

Three months later, in October 2010, Plaintiff again took the COMLEX I examination and passed, which officially qualified Plaintiff to work in a hospital setting. (Id. ¶ 14.) Plaintiff thereafter began his third year medical student clinical rotations. (Id.) Between October 2010 and June 2011, Plaintiff successfully completed all of his assigned third-year core clinical rotations. (Id. ¶ 16.)

In June 2011, Plaintiff began a ten-week surgical rotation at Plainview Hospital. (Id. ¶ 17.) One morning during this rotation, as Plaintiff was preparing to observe a surgical procedure, a Plainview Hospital Operating Room ("OR") Scrub Technician advised Plaintiff that his sleeves were too long to wear with surgical scrubs. (Id. ¶ 18.) The Scrub Technician ordered Plaintiff to change his clothes. (Id.) Rather than changing his clothes, Plaintiff adjusted his sleeves so that they were no longer exposed under the surgical scrubs. (Id.) Plaintiff showed his adjustment to the Scrub Technician and asked for her approval. (Id.) The Scrub Technician shrugged and replied "I guess so" and she and Plaintiff entered the OR. (Id.)

A few days later, the Director of Medical Education at Plainview Hospital, Dr. Gary Rachlin, advised Plaintiff that the Scrub Technician had filed a complaint to the Hospital's

Department of Medical Education, alleging that Plaintiff had not obeyed her orders. (Id. ¶¶ 19, 23.) Plaintiff disputed the Scrub Technician's version of events and Dr. Rachlin agreed to look further into the matter. (Id. ¶ 20.) Approximately one week later, Plaintiff asked Dr. Rachlin if he had spoken with the Scrub Technician but it did not appear that he had contacted her. (Id. ¶ 21.) Months later, Plaintiff asked Dr. Abraham Jeger, Professor and Associate Dean of Clinical Education at NYIT, if he knew whether the issue with the Scrub Technician had been resolved. (Id. ¶ 22.) Dr. Jeger and NYIT Dean Mary Ann Achtziger warned Plaintiff that if he asked Dr. Rachlin about the incident again, he would likely fail his surgical clerkship. (Id.)

On or about June 29, 2011, Plaintiff was summoned to a meeting with Dr. Rachlin. (Id. ¶ 23.) During this meeting, Dr. Rachlin indicated that he found Plaintiff's speech patterns to be undesirable, criticizing what he referred to as Plaintiff's "anxious" way of speaking and describing Plaintiff's speech as "incoherent." (Id. ¶ 24.) Dr. Rachlin advised Plaintiff that he intended to share these criticisms with Dr. Jeger and that he planned to check Plaintiff's academic record for anything "glaring." (Id. ¶ 25.)

On or about July 1, 2011, Plaintiff met with Drs. Rachlin and Jeger, as well as unnamed others at the Hospital. (Id. ¶ 26.) Dr. Jeger advised Plaintiff that he believed Plaintiff would be "anxious" and would "have problems" throughout his surgical rotation, were he to continue the rotation. (Id.) Plaintiff was provided with two options by Drs. Rachlin and Jeger - he could either agree to a "voluntary" medical leave of absence, to begin immediately, or he could fail his surgical clerkship. (Id.) Dr. Jeger assured Plaintiff that if he agreed to the medical leave of absence, Plaintiff's transcript would reflect the fact that he had successfully completed - and passed - six weeks of the ten-week surgical rotation. (Id. ¶ 36.) Dr. Jeger further assured

Plaintiff that he could finish the rest of the surgical rotation later, without prejudice to his academic standing.[2] (Id.)

Plaintiff discussed this proposal with Dr. Leonard Goldstein, NYIT's Associate Clinical Dean, who advised Plaintiff that he did not think a medical leave was necessary. (Id. ¶ 27.) However, Dr. Goldstein urged Plaintiff to take the leave of absence and to take the two-part COMLEX II examination during his leave of absence. (Id. ¶ 28.) Plaintiff felt that he had no choice but to consent to the "voluntary" medical leave of absence. (Id. ¶ 35.)

While on his leave of absence, Plaintiff registered for the COMLEX II CE exam, as suggested by Dr. Goldstein. (Id. ¶ 39.) However, shortly after Plaintiff completed his registration, he learned that he had been de-registered by NYIT. (Id.) When Plaintiff asked Dr. Jeger why NYIT had de-registered him, Dr. Jeger replied, "If you took the [COMLEX II CE] exam [while on medical leave] and failed, you would blame it on being sick. And if you passed, you would say you were healthy." (Id.)

During the summer and fall of 2011, while on medical leave, Plaintiff sought treatment and insight into his disabilities. (Id. ¶ 40.) Plaintiff was diagnosed with the following conditions: (1) Attention Deficit Hyperactivity Disorder; (2) Generalized Anxiety Disorder; (3) DEF (Deficits in Executive Functioning); and (4) Cluttering (fluency speaking and expressive language dysphasia disorders). (Id.) The foregoing conditions slow down Plaintiff's written and

---

[2] Contrary to Dr. Jeger's assurances, Plaintiff later learned that he had received credit for only five weeks of the surgical rotation, not six. (Proposed Am. Compl. ¶ 36.) Moreover, Plaintiff's transcript stated that Plaintiff had withdrawn from his surgical rotation. (Id. ¶ 37.) Plaintiff pointed out the transcript error to NYIT Assistant Dean Felicia Bruno, who agreed it was incorrect. (Id. ¶ 38.) However, Plaintiff's transcript was never corrected. (Id.) Plaintiff ultimately received full credit for the surgical rotation upon completion of the course following his medical leave of absence. (Id. ¶ 37.)

verbal testing speed but have no effect on his intellectual abilities or acumen. (Id. ¶ 41.) An assessment by Dr. Paul Yellin, dated September 23, 2011, concluded that Plaintiff's "struggles . . . constitute a disability significant enough to qualify for accommodation under the Americans with Disabilities Act." (Id. ¶ 42.)

During his medical leave, Plaintiff also met with Dr. Sergei Belkin, NYIT's School Psychiatrist. (Id. ¶ 44.) Dr. Belkin warned Plaintiff that if he brought up his anxiety-related issues to NYIT, he would be dismissed from school. (Id.) Dr. Belkin's warning further aggravated Plaintiff's anxiety-related disabilities. (Id. ¶ 45.) Plaintiff returned to his studies at NYIT in September 2011 and successfully completed his third and fourth-year rotations by October 2012. (Id. ¶ 48.)

While Plaintiff completed all of his course and clinical clerkship requirements for graduation from NYIT, he also was required to take, and pass, two more examinations, COMLEX II CE and COMLEX II PE, in order to graduate. (Id. ¶ 49.) The COMLEX II CE exam consists of eight hours of testing, given in two four-hour sessions in the course of one day. (Id. ¶ 50.) The COMLEX II CE exam is a problem-based exam that assesses knowledge of clinical concepts and medical decision-making. (Id.). The COMLEX II PE exam is a clinical skills exam administered over the course of seven hours. (Id. ¶ 51.) In this exam, students perform live evaluations of multiple "patients" and write their comments out by hand. (Id.) The COMLEX II PE is strictly timed. (Id.) Both exams are graded on a pass/fail basis. (Id.)

Plaintiff asked NYIT for permission to apply for appropriate and reasonable testing accommodations for the COMLEX II CE and COMLEX II PE exams. (Id. ¶ 52.) In response to Plaintiff's request, NYIT Assistant Dean Bruno advised Plaintiff that, as per a rule set forth in the

NYIT student handbook, he would be dismissed from school if he did not attempt both the COMLEX II CE and COMLEX II PE exams prior to his stated graduation date of December 31, 2012. (Id. ¶¶ 54-55.) Again, Plaintiff's anxiety worsened. (Id. ¶ 59.)

In reliance on Assistant Dean Bruno's instructions, Plaintiff registered for both the COMLEX II CE and COMLEX II PE exams. (Id. ¶ 63.) Plaintiff took both exams in December 2012 without any accommodations and failed both exams. (Id.).

In January 2013, Plaintiff began a mandatory six-month COMLEX leave of absence. (Id. ¶ 64.) In April 2013, Plaintiff registered to take the COMLEX II PE exam a second time. (Id. ¶ 65.) Plaintiff again took the COMLEX II PE exam without any accommodation and again failed the exam. (Id. ¶ 67.)

In May 2013, Plaintiff applied to the NBOME for extended time to take the COMLEX II CE exam based on his diagnosed disabilities with respect to reading fluency and reading rate. (Id. ¶ 68.) Approximately six weeks later, the NBOME denied Plaintiff's accommodation request. (Id. ¶ 69.)

In June 2013, Plaintiff applied to the NBOME for extended time to take the COMLEX II PE exam to accommodate his expressive language dysphasia. (Id. ¶ 70.) The NBOME did not respond to Plaintiff's request. (Id.)

Plaintiff followed up with the NBOME regarding his accommodation request. (Id. ¶ 71.) The NBOME advised Plaintiff that a "mix up" had prevented them from processing Plaintiff's accommodation request. (Id.) Finally, the NBOME informed Plaintiff that it might consider processing his accommodation request by the impending September 5, 2013 test date if he submitted additional information documenting his accommodation needs. (Id. ¶ 72.)

Plaintiff provided the additional information requested by the NBOME; however, his submission was ultimately rejected by an NBOME official who advised Plaintiff that it would take too long for them to consider the material. (Id. ¶ 73.) Despite Plaintiff's attempts to explain why he needed accommodations, the NBOME rejected Plaintiff's accommodation requests for both the COMLEX II CE and COMLEX II PE exams. (Id. ¶ 74.)

On or about August 30, 2013, Plaintiff's counsel submitted a letter to NYIT's Office of Disability Services ("ODS"), requesting that Plaintiff be allowed to take a six-month medical leave of absence to allow him to take both the COMLEX II CE and COMLEX II PE exams by February 2014. (Id. ¶ 75.) The letter was supported by medical evidence documenting Plaintiff's diagnosed disabilities. (Id.)

Plaintiff thereafter met with Alyssa Aprovenzano, a representative of NYIT's ODS, who advised Plaintiff that he was a student with a disability entitled to a reasonable accommodation relative to the two COMLEX II exams. (Id.) Ms. Aprovenzano further advised Plaintiff that ODS would try to get Plaintiff his requested accommodations for the COMLEX II exams scheduled for September 5, 2013, or, if not possible, for a later date. (Id.) Finally, Ms. Aprovenzano informed Plaintiff that if the reasonable accommodations could not be arranged in time for the scheduled exams, ODS would actively support Plaintiff's request for a medical leave of absence to take the COMLEX II exams at a later date and would assist Plaintiff in securing reasonable testing accommodations from the NBOME. (Id.)

On September 19, 2013, Plaintiff contacted NYIT Dean Achtiziger regarding his August 30, 2013 application to the ODS for a medical leave of absence. (Id. ¶ 77.) Dean Achtiziger denied Plaintiff's request for a medical leave in an email dated September 20, 2013, stating that

Plaintiff was not eligible for medical leave because he was already on a mandatory COMLEX leave of absence. (Id. ¶ 78.) Dean Achtiziger further advised Plaintiff that he was not an active student when he requested the medical leave. (Id. ¶ 79.)

Plaintiff thereafter retained a civil rights attorney, who commenced a dialogue with NYIT's Assistant General Counsel, asking that NYIT not dismiss or de-register Plaintiff while he filed a complaint with the United States Department of Education's Office of Civil Rights ("OCR"), allowing the OCR time to investigate. (Id. ¶ 80.)

On or about September 24, 2013, Plaintiff filed an internal grievance petition with NYIT, alleging that its' COMLEX leave policy prohibiting a student on COMLEX leave from simultaneously taking another form of leave - specifically, medical leave - as well as its policy of strictly and without exception linking graduation with advance completion of the COMLEX II exams violates the Americans with Disabilities Act. (Id. ¶ 81.) In response to Plaintiff's internal grievance petition, NYIT, on October 21, 2013, warned Plaintiff that if he did not receive the requested accommodations from the NBOME and pass both the COMLEX II CE and COMLEX II PE exams by January 31, 2014, he would be dismissed from school. (Id. ¶ 84.)

By correspondence dated January 31, 2014, NYIT's counsel advised Plaintiff that it "might not" dismiss Plaintiff if it was provided with a copy of Plaintiff's OCR complaint that was filed on January 29, 2014. (Id. ¶ 85.) Plaintiff's counsel spoke with NYIT's counsel that same day and advised NYIT's counsel that the NBOME would require at least three months in advance of a COMLEX II testing date to consider any accommodation requests and that scoring for the COMLEX II PE exam would take an additional ten to twelve weeks. (Id. ¶ 87.) Accordingly, it was impossible for Plaintiff to have his accommodation request considered and

decided by the NBOME, and take both COMLEX II exams and have them scored by the January 31, 2014 deadline imposed by NYIT. (Id.)

Plaintiff commenced the within action on June 27, 2014, alleging disability discrimination in violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq., and Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., as well as a host of state law claims. Plaintiff now seeks to amend his Complaint as follows: (1) to request injunctive relief pursuant to Title III of the ADA; (2) to add causes of action for retaliation against Plainview Hospital pursuant to both the ADA and the Rehabilitation Act; (3) to add a claim for tortious interference with contract against NYIT; and (4) to add a cause of action pursuant to the New York City Human Rights Law against all Defendants.

## DISCUSSION

I.    Legal Standard

Federal Rule of Civil Procedure 15 governs the amendment of pleadings and provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the courts's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to allow such leave is firmly within the discretion of the district court. See Liberty Mut. Ins. Co. v. First Brighton Transp. Mgmt,, No. 07 CV 715, 2008 U.S. Dist. LEXIS 31791, at *11-12 (E.D.N.Y. Apr. 16, 2008) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)). Leave to amend is generally granted unless there appears to be bad faith or unnecessary delay on the part of the movant, or permitting the proposed amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962).

-10-

"[T]he standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b)(6) motion to dismiss - namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." Catholic Diocese of Rockville Centre v. Inc. Vill. of Old Westbury, 09 Civ. 5195, 2012 WL 1392365 at *5 (E.D.N.Y. Apr. 23, 2012) (quoting Crippen v. Town of Hempstead, 07 Civ. 3478, 2009 WL 803117, at *1 n. 1 (E.D.N.Y. Mar. 25, 2009)). In order to defeat a Rule 12(b)(6) motion, an individual must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The court must construe the facts alleged by the party proposing the amendment to be true and view them in the most favorable light." Hartman v. County of Nassau, No. 04 CV 1784, 2008 U.S. Dist. LEXIS 34729, at *55 (E.D.N.Y. Apr. 28, 2008) (citing Narvarte v. Chase Manhattan Bank, N.A., No. 96 CV 8133, 1998 U.S. Dist. LEXIS 15530, at *1 (S.D.N.Y. Oct. 1, 1998)). However, the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A plaintiff must offer "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678. The party opposing amendment bears the burden of demonstrating that leave to amend would be prejudicial or futile. See Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998) (citation omitted).

II.   Plaintiff's Proposed Requests for Injunctive Relief Pursuant to the ADA

Plaintiff's Proposed Amended Complaint seeks to add several requests for injunctive relief in connection with his ADA claims, as follows: (1) a declaratory judgment that Defendants

violated the ADA; (2) an order enjoining Defendants from (a) discriminating against medical students with disabilities; (b) failing to make reasonable accommodations necessary to afford a disabled person an equal opportunity to complete his or her medical school program; (c) aiding, abetting, inciting, compelling or coercing any violation of the ADA; (3) an order compelling Defendants to (a) modify their policies, practices and procedures to comply with the ADA; (b) train all management, administrators and staff about anti-discrimination laws, particularly with respect to the rights of medical students with disabilities; (c) develop written procedures regarding the proper treatment of medical students with disabilities; and (4) an order mandating Plainview Hospital to, in coordination with NYIT, facilitate an accurate reporting of Plaintiff's transcript for his surgical clerkship evaluation.[3] (Proposed Am. Compl. Wherefore Clause Nos. 21-23, 36.) Plainview Hospital opposes Plaintiff's request to amend on futility grounds, asserting that Plaintiff does not have standing to seek the requested injunctive relief.

Title III of the ADA proscribes discrimination against disabled individuals in public accommodations. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004). As the Court of Appeals for the Second Circuit has made clear, "[a] private individual may only obtain injunctive relief for violations of a right granted under Title III [of the ADA]; he cannot recover damages." Id. at 86.

The Supreme Court has established specific standing requirements for plaintiffs seeking injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95 (1983); O'Shea v. Littleton, 414

---

[3] Plaintiff's transcript reflects a "W(R)" for his surgical clerkship, indicating that he withdrew and repeated it. Plaintiff seeks an order directing the Hospital and NYIT to amend his transcript to reflect an accurate grade of "P" or pass. (Proposed Am. Compl. Wherefore Clause No. 36.)

U.S. 488 (1974). To establish standing to seek injunctive relief, a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Lyons, 461 U.S. at 101-02 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."[4] O'Shea, 414 U.S. at 495-96. More specifically, in the ADA context, a plaintiff seeking to establish standing for injunctive relief "must not merely allege past injury, but also a risk of future harm." Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condo., 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006).

Plaintiff cannot meet the requirements set forth above to establish the necessary standing to pursue his proposed requests for injunctive relief. As alleged in the Proposed Amended Complaint, Plaintiff has satisfied all of his requirements for graduation from NYIT and for completion of his surgical clerkship rotation at Plainview Hospital. Accordingly, Plaintiff cannot establish any future harm that he may suffer as a result of any allegedly discriminatory policies and procedures implemented by Defendants since there is no need for Plaintiff to return to NYIT or Plainview Hospital as a medical student or to take any more examinations administered by the NBOME. See Access 4 All, 458 F. Supp. 2d at 168 ("[T]he failure to allege . . . an intention or desire to return to the place where a plaintiff encountered an ADA violation, or merely alleging an intention to return 'some day' merits dismissal of the claim [for injunctive relief].").

_____

[4] Declaratory judgment is similarly "inappropriate when it is sought to adjudicate past acts." Scheiner v. ACT Inc., No. 10-CV-0096, 2013 U.S. Dist. LEXIS 25204, at *10 (E.D.N.Y. Feb. 24, 2013) (citing SEC v. Credit Bancorp, Ltd., 738 F. Supp. 2d 376, 388-89 (S.D.N.Y. 2010)).

All of the discrimination alleged in the Proposed Amended Complaint is based on past events that occurred while Plaintiff was enrolled in NYIT and participating in his surgical clerkship at Plainview Hospital. Since Plaintiff fails to allege how he will suffer any future harm absent injunctive relief, his requests for injunctive relief in connection with his ADA claims are futile.

In addition, Plaintiff's requests for injunctive relief are moot. A case is moot where "the parties lack a legally cognizable interest in the outcome" of the action such that the plaintiff no longer has a "personal stake" in the action. Fox v. Bd. of Trustees of State Univ. of NY, 42 F.3d 135, 140 (2d Cir. 1994). Mootness results where "interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." Irish Lesbian and Gay Org. v. Guiliani, 143 F.3d 638, 647 (2d Cir. 1998).

The Second Circuit "has consistently held that students' declaratory and injunctive claims against the universities that they attend are mooted by the graduation of the students." Fox, 42 F.3d at 140 (citing Cook v. Colgate Univ., 992 F.2d 17, 19 (2d Cir. 1993); see also Brief v. Albert Einstein Coll. of Med., No. 10-2580-cv, 423 Fed. Appx. 88, 90 (2d Cir. June 1, 2011) ("As a preliminary matter, because Brief has now graduated from medical school, received his M.D., and is participating in (or has already completed) a pediatrics residency program, his claim for injunctive relief is moot."). Since Plaintiff has completed all of his course and clinical clerkship requirements necessary for graduation, (Proposed Am. Compl. ¶ 49), injunctive relief under the ADA cannot provide Plaintiff with any legally cognizable benefits at this point.

For the foregoing reasons, Plaintiff's motion to amend his Complaint with respect to the requests for injunctive relief pursuant to Title III of the ADA is denied as futile.

-14-

III.     Plaintiff's Proposed Discrimination and Retaliation Claims

Plaintiff next seeks to amend his Complaint to add the Hospital to his Fourth Cause of Action for discrimination in violation of Section 504(a) of the Rehabilitation Act, (Proposed Am. Compl. ¶¶ 127-36), and to add a retaliation claim against all Defendants pursuant to the Rehabilitation Act. (Id. ¶¶ 109-26.) The Hospital opposes the amendment on the grounds of futility. NYIT does not address this cause of action in their opposition.

"Both the Rehabilitation Act and the ADA protect disabled persons from discrimination in the provision of public services." Weixel v. Bd. of Educ., 287 F.3d 138, 146 (2d Cir. 2002); see also Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004). Since the standards for discrimination and retaliation under the ADA and the Rehabilitation Act are, in most cases, the same, the Second Circuit has directed that the claims may be considered together. See Powell, 364 F.3d at 85 (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

1.     Discrimination

"At this very early stage of the litigation," Plaintiff's disability discrimination claim is sufficient if the complaint alleges that "(1) [Plaintiff] has a disability for purposes of Section 504/ADA, (2) [he] is otherwise qualified for the benefit that has been denied, and (3) [he] has been denied the benefit by reason of his disability." Weixel, 287 F.3d at 146-47 (citing Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998)). The only element in dispute appears to be the third - that Plaintiff was denied the benefit by reason of his disability.

Construing the facts alleged in the Proposed Amended Complaint liberally, and in the light most favorable to Plaintiff - as the Court must at this juncture - the Proposed Amended Complaint states a claim for disability discrimination under the Rehabilitation Act, such that

-15-

permitting Plaintiff to amend his Complaint would not be futile. As the Proposed Amended Complaint sets forth, in June 2011, Plaintiff met with Dr. Rachlin, the Hospital's Director of Medical Education, who disparaged Plaintiff's speech patterns and advised Plaintiff that he planned to speak to the Associate Dean of Clinical Education at NYIT, Dr. Jeger, about Plaintiff's speech. (Proposed Am. Compl. ¶¶ 23-25.) On July 1, 2011, during a meeting with Drs. Rachlin and Jeger, Plaintiff was informed that, due to his perceived disabilities, he would have problems continuing his surgical rotation and was presented with two options - agree to a voluntary medical leave of absence or fail the surgical clerkship. (Id. ¶ 26.) While these allegations may not be enough for Plaintiff to ultimately prevail against the Hospital, at this early stage, they are sufficient to state a claim for disability discrimination.

Accordingly, Plaintiff's motion to amend to add a cause of action against the Hospital for disability discrimination pursuant to the Rehabilitation Act is granted.

2.    Retaliation

With respect to retaliation under the ADA or the Rehabilitation Act, a plaintiff must establish the following elements: (1) Plaintiff was "engaged in protected activity;" (2) "the alleged retaliator knew that [P]laintiff was involved in protected activity;" (3) "an adverse decision or course of action was taken against [P]laintiff;" and (4) "a causal connection exists between the protected activity and the adverse action." Weixel, 287 F.3d at 148; see also Roggenbach v. Touro Coll. of Osteopathic Med., 7 F. Supp. 3d 338, 346 (S.D.N.Y. 2014). While "protected activity" may "refer to action taken to protest or oppose statutorily prohibited discrimination," Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000), it can also include requesting a reasonable accommodation of a plaintiff's disability. See Weixel, 287 F.3d at 149

-16-

(citing Muller v. Costello, 187 F.3d 298, 311 (2d Cir. 1999).

As with Plaintiff's discrimination claim, a liberal construction of the Proposed Amended Complaint finds that Plaintiff has stated enough, at this juncture, to state a claim for retaliation. Whether Plaintiff will ultimately prevail remains to be seen; however, taking the facts in the light most favorable to Plaintiff, the Court finds that permitting Plaintiff to amend his Complaint to include a claim for retaliation pursuant to the Rehabilitation Act would not be futile. Accordingly, Plaintiff's motion to amend with respect to this cause of action is granted.[5]

IV.     Plaintiff's Proposed NYCHRL Claim

Next, Plaintiff seeks to add a cause of action against all Defendants for disability discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (Proposed Am. Compl. ¶¶ 256-67.) Both the Hospital and NYIT oppose Plaintiff's motion on futility grounds.

Title 8 of the New York City Administrative Code makes it unlawful for an owner, lessee, or operator of any place of public accommodation to discriminate "because of the actual or perceived . . . disability . . . of any person, directly or indirectly . . . ." N.Y.C. Admin. Code § 8-107(4)(a). To state a claim for relief under the NYCHRL, Plaintiff "must allege that the

---

[5] Plaintiff also seeks to add the Hospital to his Fifth Cause of Action for violation of the implementing regulations of the Rehabilitation Act, 45 C.F.R. § 88.4(b)(1)(v). (Proposed Am. Compl. ¶¶ 137-40.) As the Hospital points out, "these regulations provide no more protection than the Rehabilitation Act itself." Goonewardena v. N. Shore Long Island Jewish Hosp., No. 11-CV-2456, 2014 U.S. Dist. LEXIS 41659, at *31 (E.D.N.Y. Mar. 26, 2014). Nor does there appear to be a private right of action under these regulations independent of the Rehabilitation Act. Tellingly, Plaintiff does not even address this cause of action in his motion papers in reply to the Hospital's opposition to the within motion. Accordingly, Plaintiff's motion to amend his Complaint with respect to the Fifth Cause of Action is denied as futile.

Defendants discriminated against [him] 'within the boundaries of New York City.'" Roblex v. Cox & Co., Inc., 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (quoting Shah v. Wilco Sys., Inc., 806 N.Y.S.2d 553, 558 (1st Dep't 2005)) (additional citations omitted); see also Fried v. LVI Servs., Inc., No. 10 Civ. 9308, 2011 WL 4633985, at *12 (S.D.N.Y. Oct. 4, 2011) ("The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City."). "[T]o determine the location of the discrimination under the NYCHRL, courts look to the location of the impact of the offensive conduct." Robles, 841 F. Supp. 2d at 623 (quoting Curto v. Med. World Commc'ns, Inc., 388 F. Supp. 2d 101, 109 (E.D.N.Y. 2005); see also Fried, 2011 WL 4633985, at *12 ("Courts have looked to the location of the impact of the adverse action on the plaintiff to determine the location of the discrimination.").

Plaintiff bases his NYCHRL claim on conduct that he asserts "occurred in New York City, or had an impact in New York City," including: (1) various communications between Plaintiff and his attorney and representatives of NYIT, who worked out of NYIT's New York City campus; (2) various communications between NYIT and Hospital personnel; and (3) Plaintiff's completion of his surgical clerkship at LIJ's Forest Hills facility, located in Queens, New York. (Proposed Am. Compl. ¶¶ 260.) According to Plaintiff, had the Hospital not discriminated against him, he would have completed his surgical clerkship in Nassau County, rather than New York City. (Id.)

The allegations set forth in Plaintiff's Proposed Amended Complaint concerning various communications with Defendants in New York City are insufficient to support a claim pursuant to the NYCHRL. "[I]t is the impact of the adverse action, and not the location where acts

-18-

leading to the discrimination occur that gives rise to a claim under the NYCHRL." Robles, 841

F. Supp. 2d at 623 (citation omitted). Indeed, the very argument Plaintiff is attempting to

advance here - that a plaintiff may invoke the NYCHRL because a discriminatory decision is

made in New York City - has been explicitly rejected by numerous district courts that have

considered it. See, e.g., Robles, 841 F. Supp. 2d at 625 (finding that the NYCHRL did not apply

since Plaintiff was employed outside of New York City, even though "the decision to terminate

Plaintiff was made in New York City"); Fried, 2011 WL 4633985, at *13 (rejecting Plaintiff's

argument that the NYCHRL should apply because Defendant was headquartered in New York

City, the decision to terminate him was made in New York City and Plaintiff attending meetings

and made regular phone calls to Defendant's offices in New York City); Wahlstrom v. Metro-

North Commuter R.R. Co., 89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000) ("[T]he NYCHRL only

applies where the actual impact of the discriminatory conduct or decision is felt within the five

boroughs, even if a discriminatory decision is made by [a] New York City office.").

The fact that Plaintiff eventually completed his surgical clerkship within the boundaries

of New York City, however, gives the Court pause. While all of the allegedly discriminatory

conduct occurred and was communicated to Plaintiff in Nassau County, it is plausible that

Plaintiff felt the "impact" of that discrimination within the boundaries of New York City when

he was compelled to complete his surgical rotation at a hospital in Queens, rather than his

original choice of hospital in Plainview. See Welch v. UPS, 871 F. Supp. 2d 164, 180 (E.D.N.Y.

2012). Construing the facts set forth in the Proposed Amended Complaint liberally, the Court

finds that Plaintiff has stated enough, at this point, to allow a claim under the NYCHRL to

proceed. Accordingly, Plaintiff's motion to amend to add a claim pursuant to the NYCHRL is

granted.

V.     Plaintiff's Proposed Tortious Interference with Contract Claim

Finally, Plaintiff's motion to amend seeks to add a claim for tortious interference with contract against NYIT. NYIT opposes the motion on futility grounds.

To state a claim of tortious interference with contract under New York law, Plaintiff must show "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." Semper v. N.Y. Methodist Hosp., 786 F. Supp. 2d 566, 583 (E.D.N.Y. 2011) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996)). As a rule, "conclusory allegations of interference with an unspecified contract are insufficient to plead tortious interference." Lesesne v. Brimecome, 918 F. Supp. 2d 221, 227 (E.D.N.Y. 2013) (collecting cases); 57th St. Arts, LLC v. Calvary Baptist Church, 861 N.Y.S.2d 946, 946 (1st Dep't 2008) ("Conclusory assertions of wrongful, intentional, malicious or improper actions, for personal profit or constituting independent torts, are inadequate to spell out a claim . . . for tortious interference with contract.").

Here, Plaintiff alleges that he had a contract with the NBOME, which was the "Bulletin of Information" provided to all students who applied to take certain examinations administered by the NBOME. (Proposed Am. Compl. ¶ 234.) Plaintiff further alleges that NYIT had

knowledge of this contract and "intentionally procured NBOME's breach of the contract[6] . . . without cause or justification, and through wrongful means." (Id. ¶¶ 234-35.) Such vague, conclusory allegations fail to state a claim for tortious interference with contract.

Specifically, to establish NYIT's intentional procurement of a breach of contract, Plaintiff "must show that there would not have been a breach but for the activities of the defendant[]." Watts v. Jackson Hewitt Tax Serv. Inc., 675 F. Supp. 2d 274, 282 (E.D.N.Y. 2009) (quoting Innovative Networks, Inc. v. Young, 978 F. Supp. 2d 167, 180 (S.D.N.Y. 1997)). Absent from the Proposed Amended Complaint are any factual allegations detailing "how [NYIT']s activities were the 'but for' cause of any contractual breaches." Watts, 675 F. Supp. 2d at 282 (citing Innovative Networks, 978 F. Supp. 2d at 180). "[T]he sheer possibility that a defendant has acted unlawfully is insufficient as a matter of law" to state a claim for tortious interference with contract. Watts, 675 F. Supp. 2d at 180 (citation and quotation marks omitted).

Based on the foregoing, it would be futile to permit Plaintiff to amend his Complaint to add a claim for tortious interference with contract. Plaintiff's motion with respect to this cause of action is accordingly denied.


## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend his Complaint is granted in part and denied in part. Plaintiff is directed to file his Amended Complaint in accordance with the rulings made herein within five (5) days.

---

[6] The NBOME is alleged to have breached its contract with Plaintiff by failing to provide him with the reasonable testing accommodations he requested. (Proposed Am. Compl. ¶ 236.)

In addition, the pending motions to dismiss filed by Defendants NBOME and Plainview Hospital are denied as moot since they are directed to the original Complaint, which is no longer the operative pleading in this action. Defendants are directed to advise the Court, in writing, within ten (10) days, whether they intend to move to dismiss the Amended Complaint or, since discovery is currently ongoing and set to close in approximately five months, whether they will instead move for summary judgment upon the close of discovery.

The Clerk of the Court is directed to terminate the motions pending at Docket Entries 42, 44, and 49.

**SO ORDERED:**

Dated: Central Islip, New York
July 28, 2015

s/ Leonard D. Wexler
LEONARD D. WEXLER
United States District Judge