UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AJAY BAHL,

                          Plaintiff,

          -against-

NEW YORK COLLEGE OF OSTEOPATHIC
MEDICINE OF NEW YORK INSTITUTE OF
TECHNOLOGY ("NYCOM-NYIT" or "NYCOM");
THE NATIONAL BOARD OF OSTEOPATHIC
MEDICAL EXAMINERS ("NBOME"),

                          Defendants.

Docket No.: 14-CIV-4020
(LDW)(AKT)

**DECLARATION OF
AJAY BAHL**

AJAY BAHL, pursuant to 28 U.S.C. section 1746, declares under the penalty of perjury as follows:

1. I am the Plaintiff in the aforementioned action, and live in the State of New York ("NY").

2. I submit this declaration in opposition to the National Board of Osteopathic Medical Examiners' ("NBOME") motion to dismiss the amended complaint or transfer all claims to Indiana Court.

3. As revealed in discovery, there is no connection between this case and the State of Indiana. There are, however, substantial contacts with the State of NY, and numerous reasons why this Court is a more appropriate venue than Indiana, rendering transfer inappropriate.  The facts below explain this in greater detail and provide relevant background for the Court's consideration.

1

**NBOME**

4.  NBOME is an independent, not-for-profit organization. Although incorporated in Indiana, NBOME's headquarters is in Chicago, Illinois, where NBOME conducts business. (Dkt. 77, ¶ 5). NBOME is responsible for administering Levels 1, 2 and 3 of the "Comprehensive Osteopathic Medical Licensing Examination" ("COMLEX"), a series of national board examinations required for osteopathic physician licensure in the United States. (Id.). NBOME maintains executive offices and a national center for clinical skills testing in Pennsylvania and corporate offices in Illinois. (Id.). Also, NBOME produces the COMAT exams, which are subject exams taken by osteopathic medical students. https://www.nbome.org/comatmain.asp?m=can. I took three COMAT exams at the New York College of Osteopathic Medicine ("NYCOM") in NY, while enrolled at NYCOM. An average student, takes approximately six COMAT exams. NBOME's administration and profit from its COMAT exam further shows NBOME's contacts with NY. The COMAT exam is distributed from NBOME directly to the osteopathic medical schools for the medical school students to take. The medical schools in NY directly pay NBOME for these exams, which are taken in NY, and scored by NOBME. As noted on NBOME's website, NBOME provides pre-examination training for test proctors. https://www.nbome.org/comat5.asp?m=can. Thus, it is reasonable to infer that NBOME trained the NY proctors who proctored my tests in NY, as well as all the other tests given in NY. NY medical schools administer a given COMAT subject examination up to 10 times per year. https://www.nbome.org/comat5.asp?m=can. This is to each student, per subject. Also, it is reasonable to infer that the proctors who administer the tests in NY communicate with NBOME regarding how and when the test will be conducted and thus,

NBOME exerts control within NY. Also, NBOME charges money when NY residents take its COMAT exams in NY.  https://www.nbome.org/comat7.asp?m=can.  Additionally a school coordinator can request a score confirmation after a test is scored – for each score confirmation NBOME charges a $25 fee.  https://www.nbome.org/comat4.asp?m=can

**NBOME's COMLEX Exams**

5.  The COMLEX-USA examinations include the COMLEX-USA Level 1, COMLEX-USA Level 2-CE (Cognitive Evaluation), and COMLEX-USA Level 2-PE (Performance Examination), and COMLEX-USA Level 3 examinations.  Students cannot graduate osteopathic medical schools in the United States without passing these examinations. Students cannot take these examinations unless they are enrolled in an osteopathic medical school.

6.  Approximately 260 times each year, NBOME contracts with Prometric, Inc. ("Prometric") to proctor its exams throughout the country.  (Ex. 1).  Although Prometric proctors the COMLEX-USA exams, NBOME retains sole discretion and final decision-making authority over every major aspect of the administration of the exams, including candidate illness, computer malfunction issues, exam interruptions, special assistances to candidates for food, drinks, hearing aids, occurrence of irregular conduct, protection of the staff and candidates at exam sites.  (Ex. 4, pp. 20-28).

7.  As most relevant to this case, NBOME maintains final decision making authority with regard to whether to grant students testing accommodations for disabilities.  (Ex. 4, pp. 20-

28).   All disability accommodations requests are made to NBOME pursuant to their procedures and are decided upon by NBOME in accordance with the standards and procedures established by NBOME. (Ex. 4, pp. 13-16).

8.  In 2013-14, there were 1,937 students enrolled in NY osteopathic medical schools who had to take the COMLEX exams.  (Ex. 3).   All of these NY students had to register, verify personal information, correspond with NBOME's client services, and pay NBOME through its website.  (Ex. 2, p. 4).  If any of these students needed testing accommodations, they had to submit such applications to NBOME and NBOME would make the decisions related thereto – all such decisions would have consequences on the students in NY, which would also affect the NY medical schools.

**<u>Brief Overview of My Claims Against NBOME</u>**

9.  The gravamen of my claims against NBOME is that NBOME improperly processed and incorrectly denied my requests for testing accommodations for the COMLEX 2 PE and COMLEX 2 CE examinations.

10. I was required to take these tests because my medical school, the New York College of Osteopathic Medicine of New York Institute of Technology ("NYCOM") required me to pass these exams to graduate and become a doctor.

11. During the course of this case, we have conducted substantial discovery regarding my interactions with NBOME.   I have participated in ten days of depositions. My deposition

transcript alone is nearly 1,400 pages.  I have been the recipient of approximately 6000 pages of documents.  Additionally, my attorneys have deposed seven witnesses. None of the witnesses deposed resided in Indiana, all reside in NY and were deposed in NY.  Two reside in Illinois and were deposed via telephone.

12. Discovery has revealed that NBOME's Testing Accommodations Committee ("TAC") was the decision-making body which denied my accommodation requests.  As described below, none of the TAC decision makers were located in Indiana, no testifying witnesses are located in Indiana, and many actions and witnesses are located in NY, including all of the doctors who rendered opinions about my disability and my need for accommodations, as well as my treating physicians and others.

**Pre-Medical School Efforts**

13. In Fall 2003, I enrolled as an undergraduate at NYU.  I majored in psychology, with the goal of attending medical school and become a doctor.  During college, I took over a dozen pre-requisite courses to be eligible to apply to medical school.   I graduated from NYU in Spring 2007.

14. In 2006, I began studying for the Medical College Admissions Test ("MCAT").  Between 2006 and 2007, I estimate that I spent a total of approximately 1,500 hours studying for the MCAT and substantial monies in preparation courses and materials.

15. I took the MCAT and began applying to medical schools.

16. To enhance my chances of being admitted to a medical school, in August 2007, I moved to Pennsylvania, and enrolled in the University of Pennsylvania's Post-Baccalaureate Program, which was designed to enhance the competitiveness of medical school applicants, and to prepare them for the rigors of medical school. I financed these studies and living expenses through substantial loans.

**Acceptance at NYCOM**

17. In 2008, I was accepted into NYCOM's four-year Doctor of Osteopathic Medicine Program, and began my studies in July 2008. I financed my studies and living expenses with loans.

**My Forced "Acceptance" of Forum Selection Clause**

18. In July 2010, after two years of medical school, it was time for me to take the first of NBOME's exams – specifically, NBOME's COMLEX 1 exam, a test I had to take to continue my progression in medical school.  Like all other applicants, I registered through NBOME's Registration System.  I registered while I was in NY and paid NBOME for the right to take the exams.

19. To register, I was required to adhere to NBOME's Terms and Conditions by clicking an "Agree to Terms" button. (Def. Br. 7-8).  The Terms and Conditions included, inter alia, the following:

- <u>Choice of Law, Forum Selection</u>. These terms and conditions and all other agreements of the candidate with the NBOME shall be construed under the laws of the state of Indiana, and any claim or action brought by or for the candidate shall be brought only in a court of competent jurisdiction located in Marion County, state of Indiana, to which jurisdiction the candidate personally and expressly consents, as more fully described in Section II. B. of the Bulletin of Information which is incorporated here by reference. (Ex. 4, p. 2).

- NBOME could "amend, modify or supplement any or all the provisions, terms and conditions of the Bulletin of Information with notice to or consent of the candidate, and all such amendments, modifications or supplement shall be effective when published by NBOME in the Bulletin of Information." (Ex, 4, pp. 1-3).

- In addition, NBOME's Choice of Law, Forum Section Provision, published in its COMLEX-USA Bulletin of Information, provides: "...NBOME *may in its sole discretion* require that any claim, demand, complaint of the candidate...be resolved by arbitration in Marion County, Indiana, in accordance with the laws of the State of Indiana." (Ex. 4, p. 3) (emphasis added).

- <u>Limitation of Liability</u>.  Neither the NBOME nor its employees, officers, directors or agents shall be responsible or liable to the candidate or any other person for any direct, indirect, consequential, punitive or other damages claimed by or for the candidate, or for any injunctive or other equitable relief whatsoever, even if caused by any negligent act or omission, except for the refund to the candidate of any registration fee or other fee paid by the candidate related to the claim, that being the candidate's sole remedy for any such claim. (Ex. 4, p. 2).

- <u>Release of NBOME and Others</u>.  The candidate unconditionally releases and discharges the NBOME, its employees, officers, directors and agents ("Released Parties") from any and all claims, liabilities, damages or losses whatsoever, known or unknown, that arise out of or are related to any act or omission, including any negligent or other act or omission of the Released Parties or any of them, including but not limited to the construction, administration or scoring of any NBOME examination administered to the candidate at any time. (Ex. 4, p. 2).

20. By the time I registered for this exam, I had devoted seven years of study to becoming a doctor (four years at NYU, one year at UPenn, and two years at NYCOM), which cost me hundreds of thousands of dollars, the vast majority of which was borrowed.

21. Prior to registering for the COMLEX 1, I had no prior interactions with NBOME, and was never informed of the terms and conditions that NBOME demanded of its examinees. I discovered this only upon my registration for COMLEX 1. Although NBOME claims this information was available on its website, I would never have had a reason to review the entirety of NBOME's website prior to registering for the exams.

22. Having spent hundreds of thousands of dollars and seven years of my life studying to become a doctor, I accepted NBOME's terms and conditions because I had no practical choice but to do so. Had I refused, I would have been dismissed from NYCOM since taking and passing the COMLEX I was a mandatory requirement. Thus, all of my time, money, and effort would have been for naught.

23. It was against this backdrop that I was compelled to "accept" the choice of the Indiana forum.

24. I took and passed the COMLEX 1 exam.

**My Disabilities and Requests for a Accommodations for COMLEX 2 Exams**

25. I suffer from a constellation of diagnosed attention deficit disorders, executive function disability, speech and reading fluency disorders, expressive language dysphasia, and other anxiety-related disabilities, which substantially impair my ability to take certain examinations without appropriate accommodations. (Dkt. 77, ¶ 9).

26. On May 1, 2013, I completed the NBOME form requesting a disability accommodation for the COMLEX 2 CE (Cognitive Examination). I did not, at that time, seek an accommodation for the COMLEX PE (Performance Exam). I completed the accommodation request while located in NY. The form requires me to have NYCOM complete a section before I can submit my request to NBOME.

27. On May 3, 2013, I met with NYCOM Dean Felicia Bruno ("Bruno"), who completed part of the form and signed my accommodation request for the COMLEX 2 CE examination. Dean Bruno completed and signed the form at the NYCOM's Old Westbury, NY campus, and returned it to me in NY.

28. Thereafter, I submitted my COMLEX 2 CE accommodation request form via mail, sending it from NY to Illinois.

29. On May 28, 2013, my COMLEX 2 CE request for accommodation was marked as received by NBOME in Illinois. (Ex. 5).

30. In addition to my request form, I provided NBOME with the report generated by my treating physicians, Dr. Paul Yellin, and Beth Guadagni, M.A. ("the Yellin Report"). Dr. Yellin and Ms. Guadagni reside in NY, and prepared the report and examined me in NY. They are material witnesses in this case and NBOME deposed Dr. Yellin on three separate days in NY at Dr. Yellin's office.  The deposition spanned three days and NBOME refused to adjourn the third scheduled deposition date "because scheduling Dr. Yellin's deposition

has been difficult and he has limited availability". (Dkt, 101, p.2).  Nonetheless, Dr. Yellin is an important enough witness that NBOME's lawyer went through great lengths to schedule the deposition on three days, traveled to NYC to conduct his deposition on each occasion.  Additionally, Dr. Yellin was "only willing to testify further because defendants agreed to compensate him" and defendants did not think he would appear again even with additional compensation.  (Dkt, 101, p.2).  Moreover, because Dr. Yellin is so difficult to schedule, my attorney was unable to conduct any cross examination of Dr. Yellin as there was no time to ask questions.  Given the difficulty scheduling Dr. Yellin's deposition in NY, it seems highly unlikely that we would be able to fly to Indiana to testify and he would certainly insist that his expenses be paid and that he be paid for his time.  Dr. Yellin is the primary author of the medical report which I submitted to request an accommodation.

31. The Yellin Report, explains the nature of my disabilities concerning reading, speaking, and writing, and explains my need for accommodation, and the reasons therefor.  (Ex. 6).

32. Having already applied for an accommodation for my COMLEX CE exam, on June 6, 2013, I met with NYCOME Dean Bruno to as part of the process of applying to NBOME for an accommodation for the COMLEX 2 PE (Performance Exam). Dean Bruno, who signed this accommodation request for the COMLEX 2 PE examination.  Again, Dean Bruno completed and signed the form at NYCOM's Old Westbury, NY campus. (Ex. 7).

33. To evaluate my request for accommodations for the COMLEX 2 CE[1], NBOME engaged Dr. Benjamin Lovitt, PhD. (a NY doctor) to review the Yellin Report, and prepare a report ("Lovitt Report") for NBOME's consideration in deciding whether to grant my accommodation request for the COMLEX CE.  Upon information and belief, NBOME paid Dr. Lovitt (or caused him to be paid) in NY for his work in NY in evaluating a NY student's request for accommodation on a NBOME exam.

34. On June 7, 2013, Dr. Lovitt prepared his report relating to my application for accommodations on the COMLEX 2 CE examination. The Lovitt Report was created in NY.

35. On June 19, 2013, I finalized my work on the NBOME form requesting accommodation for the COMLEX 2 PE examination. I completed this form while located in NY.

36. Thereafter, I submitted my COMLEX 2 PE accommodation request form via mail, sending it from NY to Illinois.

**NBOME's Review of My COMLEX 2 CE Accommodation Request**

37. On June 26, 2013, NBOME's TAC met via teleconference to decide upon my accommodation request for the COMLEX 2 CE examination. I was one of nine individuals

---

[1] Although confusing, I am switching between CE and PE tell the story in chronological order. Despite the similarity in the tests' names, the differences between the CE exam and the PE exams are significant (discussed below) and my requests for accommodations for each exam were made at different times and decided at different times.

who were seeking accommodations that were reviewed by the TAC during that meeting, which lasted less than an hour. (Ex. 8). During this meeting, as detailed in the meeting minutes, the following TAC Committee members were present, and voted on the accommodation requests; notably, none of them have ties to Indiana:

    a.  Dr. Jed Magen, the Chair of the TAC, works and resides in Michigan.

    b.  Dr. William McCord, the Vice Chair of the TAC, works and resides in Alabama.

    c.  Dr. James Andriole, a TAC Committee member, works and resides in Florida.

    d.  Dr. Timothy Dombrowski, a TAC Committee member, works and resides in NJ.

    e.  Dr. Robert Foster, a TAC Committee member, works and resides in West Virginia.

    f.  Dr. Lori Kemper, a TAC Committee member, works and resides in Arizona.

    g.  Dr. Richard Labaere, a TAC Committee member, works and resides in Michigan and Missouri.

    h.  Dr. Gary Palman, a TAC Committee member, works and resides in Maine.

    i.  Dr. Roberta Wattleworth, a TAC Committee member, works and resides in Virginia.

    j.  Dr. Brian Wood, a TAC Committee member, works and resides in Virginia.

(Exs. 9-10).

38. During the June 26, 2013 TAC meeting, in addition to the Committee members, several NBOME staff/consultants also participated.  None of these potential witnesses were from Indiana, either.  These individuals included:

    a.  Casey McGrath, who acted as the Recorder of the meeting and serves as Senior Client Services Representative, works and resides in Illinois.

    b.  Margaret Wong, the Manager of Client Services, works and resides in Illinois.

    c.  Shelby Keiser, Keiser Consulting, provided consulting services to NBOME

12

concerning my requests for test accommodations, and works and resides in Pennsylvania.

(Exs. 8, 10). [2]

39. During the June 26, 2013 TAC meeting, the meeting minutes identify that in considering my application for accommodations, the TAC reviewed the Yellin Report and the Lovett Report. The three doctors who prepared the reports are not located in Indiana; in fact, all of the doctors who prepared the reports prepared them in NY, reside in NY and work in NY. (Exs. 6, 10).

**NBOME's Review of My COMLEX 2 PE Accommodation Request**

40. On June 28, 2013, NBOME received my request for accommodation concerning the COMLEX 2 PE examination. NBOME incorrectly treated this distinct request for accommodation as if it were identical to my prior COMLEX 2 CE request for accommodation. However, it was a new request for accommodation for a completely different examination. (Exs. 7, 12)

---

[2] The only meeting participant with a connection to Indiana was NBOME's counsel, Sydney Steele, Esq.  NBOME has refused to produce Steele for a deposition, and Steele represents that he will not be a witness in this case, stating:

> I do not expect or intend to be a witness, either at trial or by affidavit, to testify about any communications between me and the NBOME because all my communications with the NBOME were only as the NBOME's legal counsel and therefore are protected by the attorney-client privilege, and if called by any party to testify I would assert that attorney-client privilege.

(Ex. 11)  Thus, the only person who has any connection with Indiana is a lawyer who claims he has no non-privileged information and refuses to be deposed.

41. On August 21, 2013, and while in NY, I contacted NBOME in Illinois, regarding the status of my COMPLEX 2 PE accommodation request and seeking to submit additional documents, in part because I had not yet received a decision which I thought I should have received by then. I was informed of the error, and was told that the TAC would be unable to review any new documentation until NBOME's September 25, 2013 TAC Committee meeting.  (Ex. 13).

42. This created a huge problem.  According NYCOM guidelines, I was required to take the COMLEX 2 (both CE and PE) examinations prior to my last day as a registered student, which was scheduled to be September 9, 2013. (Ex. 14).

43. On August 22, 2013, several months after receipt of my COMLEX 2 PE request for accommodation, NBOME realized that I had submitted accommodation requests relating to both the COMLEX 2 CE, as well as a distinct request for the COMLEX 2 PE. With only days before the August 28, 2013 TAC meeting, NBOME had not previously reviewed my COMLEX 2 PE accommodation request (Ex. 15), nor did they have a doctor review the request or prepare a report related to the COMLEX PE request (Ex. 16), as they had done with my COMLEX 2 CE accommodation request.

44. This was significant because the Lovett Report only addressed my reading disabilities. Where reading is the most significant component of the COMLEX 2 CE examination, the COMLEX 2 PE examination was vastly different.

45. The COMLEX 2 PE (Performance Exam) tests patient-centered skills which are evaluated in the context of clinical encounters with patients -- the interaction must be appropriate, efficient, safe, effective, and within a 14-minute time period. After each encounter, the candidate is required to document the encounter using a SOAP note format, with SOAP referencing the method of documentation employed by health care providers in the areas of Subjective, Objective, Assessment, and Plan. Candidates have an additional nine minutes for this task, and are required to use computer keyboard entry to complete the electronic eSOAP note.

46. Thus, unlike the COMELEX CE, the COMLEX PE implicates my disabilities in regard to speaking and timed interactions with others, rather than reading. In sum, the PE and CE exams are vastly different, and my requests for accommodation were specific to the deficiencies I faced with respect to each exam – e.g., reading vs. speaking and interacting with others. (Compare Ex. 6, Yellin Report pp. 4-5, 8-9, 18 with Yellin Report 9-10, 19-21).

47. On August 28, 2013, the TAC met via teleconference to issue decisions relating to students' accommodation requests.  Despite being unprepared to evaluate my request relating to the COMLEX 2 PE, it was one of five requests the TAC reviewed during that meeting, which lasted less than an hour. (Ex. 17). As detailed in the minutes, the following TAC Committee members were present, and voted on the accommodation requests; notably, none of them have ties to Indiana:

    a.  Dr. William McCord, the Vice Chair of the TAC, resides and works in Alabama.

    b.  Dr. James Andriole, a TAC Committee member, resides and works in Florida.

    c.  Dr. Timothy Dombrowski, a TAC Committee member, resides and works in NJ.

    d.  Dr. Robert Foster, a TAC Committee member, resides and works in West Virginia.

    e.  Dr. Jonathan King, a TAC Committee member, resides and works in Colorado.

    f.  Dr. Richard Labaere, a TAC Committee member, resides and works in Michigan and Missouri.

    g.  Dr. Gary Palman, a TAC Committee member, resides and works in Maine.

    h.  Dr. Roberta Wattleworth, a TAC Committee member, resides and works in Virginia.

    i.  Dr. Brian Wood, a TAC Committee member, resides and works in Virginia.

(Exs. 9-10).

48. During the August 28, 2013 TAC meeting, and in addition to the Committee members, the other individuals who participated, acting as NBOME staff or consultants, included:

    a.  Casey McGrath, who acted as the Recorder of the meeting and serves as Senior Client Services Representative, resides and works in Illinois.

    b.  Sandra Waters, the Vice President of NBOME, resides and works in of Illinois.

    c.  Margaret Wong, the Manager of Client Services, resides and works in Illinois.

    d.  Shelby Keiser, Keiser Consulting, provided consulting services to NBOME concerning my requests for test accommodations, and resides and works in Pennsylvania.

(Exs. 8, 10).[3]

---

[3] Again, Sydney Steele, Esq., a non-witness in this case, was present for this call. (*Supra*, footnote 2)

49. According to the meeting minutes, during the August 28, 2013 TAC meeting, the TAC reviewed the Yellin Report and the Lovett Report.[4] Again, these doctors are not located in Indiana; they acted in and reside in NY. (Exs. 8, 10)

50. At the August 28 meeting, the TAC voted to deny me my COMLEX 2 PE accommodation requests.

51. On September 6, 2013, NBOME's Director of Client Services, Margaret Wong, corresponded via email with NYCOM's Barbara Salvesen (Academic Affairs), and Ronald Portanova (NYCOM's Academic Affairs staff acting as NYCOM's COMLEX-USA Coordinator), in relation to my requests for accommodation relating to the COMLEX 2 PE examination, and NBOME's failure to place my COMPLEX 2 PE accommodation application through for the July 2013 review. (Ex. 18). In these emails, Wong admitted that "NBOME mistakenly took [Bahl's PE request] as a copy of his application for the Level 2 CE" accommodation request. Id. Thus, Salvesen and Portanova are material witnesses to NBOME's admission of its mishandling of my requests for accommodation. They are both located in NY.

**Witnesses Located in New York**

52. My treating physicians all live and work in NY. They include:

    a. Dr. Lenard Adler: Dr. Adler has knowledge or information regarding my neuropsychological evaluations as well as my medically diagnosed conditions and

---

[4] The Lovett Report had limited relevance to the PE accommodation request as it primarily addressed the CE exam's reading components.

the effect the diagnosed conditions would have on exam performance. He also has information about my emotional damages. Dr. Adler is located at One Park Avenue, 8th Floor, New York, NY 10016.

b.  Dr. Paul Yellen: Dr. Yellin has knowledge or information regarding my diagnosed disability and my qualification for accommodations. He drafted the Yellin Report and can testify about same. He also has information about my emotional damages. Dr. Yellin works at 104 West 29th Street, 12th Floor, New York, NY 10001.

c.  Dr. Florence Myers, PhD; Dr. Myers has knowledge or information regarding my neuropsychological evaluations as well as my medically diagnosed conditions and the effect the diagnosed conditions have on exam performance as it relates to my speech. She also has information about my emotional damages. Dr. Myers works at 1 South Avenue, P.O. Box 701, Garden City, NY 11530.

d.  Dr. Andrew Tatarsky, Psychologist. Dr. Tatarsky treated me during the relevant periods. He has information about my disabilities and my emotional damages. Dr. Tatarsky works at 303 Fifth Avenue, New York, NY 10016.

e.  Dr. David Fazzari, Psychologist. Dr. Fazzari treated me during the relevant periods. He has information about my disabilities and my emotional damages. Dr. Fazzari works at 19 West 34th Street, New York, NY 10001.

f.  Dr. Scott Shapiro, Psychologist. Dr. Shapiro treated me during the relevant periods. He has information about my disabilities and my emotional damages. Dr. Shapiro is located at 286 Fifth Avenue, 10H, New York, NY 10001.

53. In addition to my doctors, Phil Kanyuk of Nussbaum Yates Berg Klein & Wolpow, LLP, my economic expert who is investigating my financial damages as asserted in this action, is located in NY, at 445 Broad Hollow Road, Suite 319, Melville, NY 11747.

54. Additionally, material witnesses Barbara Salvesen and Ronald Portanova (NYCOM Academic Affairs), engaged in communications with NBOME concerning the erroneous review of my test accommodations applications. (see ¶ 51, above) These witnesses work at NYCOM's Academic Affairs Office, located at 1855 Broadway, New York, NY 10023.

55. NYCOM Assistant Dean Felicia Bruno testified at deposition about the timeline imposed upon me by NYCOM for the taking of the COMLEX examinations, as a prerequisite for graduation, as well as the requirement for me to be a registered student with NYCOM to sit for NBOME's COMLEX examinations. Dean Bruno testified at deposition relating to NYCOM's deadline by which I was required to take the COMLEX examinations, which caused the problem created by NBOME's failure to recognize that I submitted a separate COMLEX 2 PE accommodation request. NBOME's delay caused NBOME's rush to decide my COMLEX 2 PE accommodation request despite not having the appropriate time and materials for the review. This forced me to take the exams without accommodation and study while experiencing substantial stress relating to the handling of the accommodation request. It also resulted in me being precluded from submitting new doctors' notes for the TAC to consider in making its decision. Dean Bruno works at NYCOM's Office of Student Administration, located at Old Westbury, New York 11568.

56. NYCOM Associate Dean Mary Ann Achtziger testified at deposition about NYCOM's timeline for taking the COMLEX examinations, as a prerequisite for graduation, as well as the requirement for me to be a registered student with NYCOM in order to sit for NBOME's COMLEX examinations. Dean Achtziger works at NYCOM's Office of Student Administration, located at Old Westbury, New York 11568.

57. NYIT's Assistant Director of Disability Services, Alyssa Provenzano, spoke with me and Dr. Paul Yellin, concerning my requests for disability accommodation for the COMLEX examinations, and who registered me with the NYIT Office of Disability Services.

19

Provenzano works at NYCOM's Manhattan Campus, located at 1855 Broadway, Room 203, New York, NY 10023.

58. NYCOM's Director of the Institute for Clinical Competence, Dr. Anthony Errichetti, who spoke with who spoke with me and Dr. Paul Yellin, concerning my requests for disability accommodation on the COMLEX examinations, is now employed by Defendant NBOME, and resides in NY.

59. As an unemployed student seeking to become a doctor, the financial cost of transporting my fact and damage witnesses to another venue is prohibitive to my action opposing discrimination.

60. As a result of being on Medicaid, I can only treat with doctors in NY. Given my disabilities, it is untenable that I could participate in a lengthy and stressful trial in Indiana, where I would be impeded from receiving psychological treatment.

61. Finally, I note that when I discovered NBOME's error, I urged NBOME to communicate with NYCOM to request that NYCOM extend my graduation deadline so that NBOME would have ample time to consider my accommodation request, including my submission of new materials. NBOME had communicated with NYCOM in this regard, but did not take steps to facilitate this request and did not clearly communicate the situation. Witnesses to these exchanges include Wong, McGrath, Salvensen, and Portanova. This interplay between NBOME and NYCOM is highly relevant to my claims against both entities.

62. On December 22, 2015, I was sued by NBOME in Indiana for breach of contract.  NBOME claims that by suing it in this Action, I breached their forum selection clause and I owe them for their legal fees which they claim are in excess of $250,000.  Rather than default in that case, I searched for an attorney who I could afford to hire with borrowed funds.  I found Kevin Betz of Betz and Blevins.  I retained him and paid him $2,500.  Although I am litigating that case in Indiana, that case is incomparable to this case.  In that case, there is only one cause of action – breach of contract.  I am the only witness.  I do not need doctors or others to come to Indiana to testify.  Also, the facts of that case are not intertwined with my claim against NYCOM or other defendant.

**Additional Exhibits**

63. The following additional exhibits are annexed hereto:

    a.   Exhibit 19: Selections from Bahl Deposition Transcript

_Ajay Bahl_
AJAY BAHL

Dated: April 22, 2016
      Carle Place, New York