**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
AJAY BAHL,

                                Plaintiff,

               -against-

NEW YORK COLLEGE OF OSTEOPATHIC
MEDICINE OF NEW YORK INSTITUTE OF
TECHNOLOGY ("NYCOM-NYIT" or NYCOM");
THE NATIONAL BOARD OF OSTEOPATHIC
MEDICAL EXAMINERS ("NBOME"); and
NORTH SHORE LONG ISLAND JEWISH PLAINVIEW
HOSPITAL ("NS-LIJ"),

                              Defendants.
--------------------------------------------------------------x

                                                 **MEMORANDUM**
                                               **AND ORDER**

                                          14 CV 4020 (AKT)

## I.   **RELEVANT BACKGROUND**

###    **A.**   **The Complaint**

      Ajay Bahl ("Plaintiff" or "Bahl") commenced this action on June 27, 2014 against New

York College of Osteopathic Medicine of New York Institute of Technology ("NYCOM-IT"),

The National Board of Osteopathic Medical Examiners ("NBOME"), North Shore Long Island

Jewish Plainview Hospital ("NS-LIJ"), and Plainview Hospital.  DE 1.  On August 17, 2015,

Plaintiff filed an Amended Complaint, which sets forth the following causes of action:

(1) violation of the Americans with Disabilities Act of 1990 42 U.S.C. § 12812(b)(1)(A)(i):

condoning third party discrimination, as to Defendants NYCOM-NYIT and NBOME;

(2) violation of the Americas with Disabilities Act of 1990 § 12203(a) and (b) and/or

Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794: Retaliation, Interference, Coercion or

Intimidation, as to Defendants NYCOM-NYIT, NS-LIJ, and NBOME; (3) violation of the

Rehabilitation Act of 1973 § 504(a), as to Defendant NYCOM-NYIT, NS-LIJ and NBOME;

(4) violation of the Rehabilitation Act of 1973 Implementing Regulations, as to Defendants NYCOM-NYIT and NBOME; (5) hostile education environment as to NYCOM-NYIT; (6) violation of the Americans with Disabilities Act of 1990 as to NBOME; (7) violations of 28 C.F.R. § 36.309(B)(1)(I) as to Defendants NYCOM-NYIT and NBOME; (8) deprivation of Plaintiff's rights under color of law as to Defendants NYCOM-NYIT and NBOME; (9) negligence as to Defendant NBOME; (10) unjust enrichment as to Defendant NYCOM-NYIT; (10) breach of contract as to Defendant NYCOM-NYIT; (11) negligent infliction of emotional distress as to Defendant NYCOM-NYIT; (12) negligent misrepresentation as to Defendant NYCOM-NYIT; (13) deceptive practices in violation of New York General Business Law § 349; (14) tortious interference with contract as against Defendant NBOME; (15) violation of New York State Human Rights Law, New York Executive Law § 291, *et seq.* as to Defendants NYCOM-NYIT, NBOME, and NS-LIJ; (16) violation of NHCHRL, NYC Admin. Code § 8-107(15)(A) as to Defendants NYCOM-NYIT, NBOME and NS-LIJ.   *See generally* DE 77. Several months after the Amended Complaint was filed, NS-LIJ and Plainview Hospital were dismissed as parties.  The Court refers the parties to Plaintiff's Amended Complaint [DE 77] for additional details regarding the allegations.

**B.    NBOME's Motion**

NBOME ("NBOME" or "Defendant") filed a Motion to Dismiss or Transfer this case to Indiana pursuant to 28 U.S.C. §1404(a) on the grounds that the Court lacks personal jurisdiction over the Defendant.  *See generally* DE 118.  According to NBOME, Defendant "develops and provides for osteopathic medical students and graduates a three-level Comprehensive Osteopathic Medical Licensing Examination ("COMLEX-USA") that is accepted by state licensing boards in all fifty states."  Defendant NBOME's Memorandum in Support of Motion to

Dismiss or Transfer Per 28 U.S.C. § 1404(a) and Forum Selection Clause ("Def.'s Mem.")

[DE 118-1] at 2-3.  Those who wish to take these exams do so by registering and purchasing

them online at the NBOME website.  *Id*. at 2.  Plaintiff registered for the Level 2-CE exam on

December 17, 2012 and again on September 9, 2013.  *Id*.  He registered for the Level 2-PE exam

on December 26, 2012, April 19, 2013 and again on September 4, 2013.  *Id*.  According to

Defendant, each time Plaintiff registered for an exam, he agreed to Defendant's Terms and

Conditions, which included the following:

> (7) Choice of Law, Forum Selection. These terms and conditions
> and any other agreement of the candidate with NBOME are
> governed by and shall be construed only under the laws of the State
> of Indiana, and any claim by or for the candidate against NBOME
> or any of its employees, officers, directors or agents, arising out of
> or relating to the construction, administration, scoring or otherwise
> of any examination of NBOME, or any act or omission of NBOME
> or any of its employees, officers, directors or agents, will be
> determined under the laws of the State of Indiana, without regard to
> the conflict laws of any state.  Candidate agrees and submits to the
> jurisdiction of the courts of or located in the State of Indiana.
> Candidate further expressly agrees that any claim, demand or
> complaint whatsoever by or for the candidate against NBOME, or
> any of its employees, officers, directors or agents, shall be brought
> only in a court of competent jurisdiction in Marion County, Indiana,
> to the exclusion of all other courts and jurisdictions. Candidate
> acknowledges that NBOME examinations are administered in all 50
> states of the United States and elsewhere, and that it is reasonable
> for the laws of the State of Indianan, the place of incorporation of
> NBOME, to be applicable and that any claim, demand or complaint
> by the candidate against NBOME, its employees, officers, directors
> or agents be brought only in a court of competent jurisdiction in
> Marion County, Indiana. …
>
> (8) Miscellaneous. These terms and conditions are legally binding
> upon the candidate, his or her heirs, successors and assigns, and may
> not be waived by NBOME without the written consent of NBOME.
> Candidate agrees that his or her agreement to these terms and
> conditions which are available online at www.nbome.org may be in
> electronic form for all purposes . . . NBOME is entitled to recover
> from the candidate all its losses and damages, including reasonable

3

> attorneys' fees and costs, caused by any breach or violation by the
> candidate of any of these terms and conditions.

Defendant NBOME asserts that Plaintiff filed the instant action in the Eastern District of New York in contravention of the forum selection clause provided in the agreement. *See generally* Def.'s Mem. Defendant therefore requests that the Court transfer this case to the United States District Court, Southern District of Indiana, pursuant to 28 U.S.C. § 1404(a) and the forum selection clause. *Id*. at 1. Should the Court decide not to grant Defendant's request to transfer, Defendant seeks dismissal of the action as against NBOME for lack of personal jurisdiction. *Id*.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See Pence v. Gee Group, Inc*., No. 16-6589, 2017 WL 629470, at *4 (E.D.N.Y. Feb. 16, 2017); *see also Sherillo v. Dun & Bradstreet, Inc*., 684 F. Supp. 2d 313, 317 (E.D.N.Y. 2010).

## III.   DISCUSSION

In order to transfer a case to another district, the Court must first determine whether the action could have been brought in the transferee court. *Pence*, 2017 WL 629470, at *5 (citing *ICICI Bank Ltd. v. Essar Glob. Fund Ltd*., No. 16-7836, 2017 WL 122994, at *6 (S.D.N.Y. Jan. 12, 2017); *Herbert Ltd. P'ship v. Elec. Arts Inc*., 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004); *In re Nematron Corp. Sec. Litig*., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998)). 28 U.S.C. § 1391, which governs venue generally, states that:

> A civil action may be brought in--
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(c) "controls the determination of the residency of corporate defendants for venue purposes." *WD Encore Software, LLC v. The Software MacKiev Company*, No. 15-6566, 2016 WL 1056628, *2 (W.D.N.Y. March 17, 2016).  Pursuant to 28 U.S.C. § 1391(c), "[a] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." "A corporation shall be deemed to be a citizen of, and therefore subject to personal jurisdiction in, both its state of incorporation and the state of its principal place of business." *WD Encore Software*, *LLC*, 2016 WL 1056628, *2 (citing 28 U.S.C. § 1332(c)).  Here, Defendant is incorporated in Indiana.  *See* Defs.' Mem. at 11. Defendant is therefore a citizen/resident of Indiana and is subject to personal jurisdiction in Indiana.

Since the Court has determined that this action could have been commenced in a federal district court in Indiana, it must now consider whether transfer to Indiana is warranted.  The Second Circuit has held that "District Courts have broad discretion in making [such] determinations" under §1404(a).  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)).  To that end, courts may consider the following factors:

> (1) the plaintiff's choice of forum,
>
> (2) the convenience of witnesses,

(3) the location of relevant documents and relative ease of access to sources of proof,

(4) the convenience of parties,

(5) the locus of operative facts,

(6) the availability of process to compel the attendance of unwilling witnesses, [and]

(7) the relative means of the parties.

*Id.* at 106-107 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)) (internal quotation marks omitted).

In *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 134 S. Ct. 568, 58 (2013), the United States Supreme Court held that this analysis changes in the context of a forum selection clause. *See Pence*, 2017 WL 629470, *5. The Supreme Court explained there that in cases involving transfer within the federal court system, forum selection clauses may be enforced by a motion to transfer venue pursuant to § 1404(a), not via a Rule 12(b)(6) motion to dismiss or a motion pursuant to 28 U.S.C. § 1406(a). *Atlantic Marine Const. Co., Inc.*, 134 S. Ct. at 575 ("We reject petitioner's argument that such a clause may be enforced by a motion to dismiss under 28 U.S.C. § 1406(a) or Rule 12(b)(3) of the Federal Rules of Civil Procedure. Instead, a forum-selection clause may be enforced by a motion to transfer under § 1404(a)…."). Unlike Rule 12(b)(6) and 28 U.S.C. § 1406(a), transfer pursuant to §1404(a) does not require a finding that venue in the forum selected by the party opposing the clause is wrong or improper; rather, it permits transfer, in relevant part, to a district court "to which the parties have agreed by contract or stipulation." *Id.* at 579. The Supreme Court articulated that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at 581 (citing

6

*Stewart*, 487 U.S., at 83, 108 S. Ct. 2239).  A court should therefore transfer a case to the forum

designated by the forum selection clause, "unless extraordinary circumstances unrelated to the

convenience of the parties clearly disfavor a transfer."  *Id*.; *see M/S Bremen v. Zapata Off-Shore

Co.*, 407 U.S. 1, 9, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) (Although historically not favored,

forum selection clauses are "prima facie valid.").  When a court is faced with a forum selection

clause, the typical analysis under §1404(a), as articulated above, changes in three important

ways:  (1) "the plaintiff's choice of forum merits no weight[,]" (2) "private interests" of the

parties' should be disregarded, and (3) "when a party bound by a forum-selection clause flouts its

contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not

carry with it the original venue's choice-of-law rules."  *Atlantic Marine Const. Co., Inc*., 134

S. Ct. at 575, 581-82.

The Second Circuit has held that whether a forum selection clause is enforceable requires

a four-part analysis.  *Phillips v. Audio Active Ltd*., 494 F.3d 378, 383 (2d Cir. 2007); *see Magi*

*XXI, Inc., v. Stato Della Citta Del Vaticano a/k/a the Holy See*, 818 F. Supp. 2d 597, 604

(Aug. 24, 2011), *aff'd by* 714 F.3d 714 (2d Cir. 2013).  First, the Court must determine whether

the clause "was reasonably communicated to the party resisting enforcement."  *Phillips*, 494 F.3d

at 383.  Second, the Court must inquire into whether the language of the clause is mandatory or

permissive.  *Id*. (citing *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc*.,

22 F.3d 51, 53 (2d Cir. 1994)).  Third, the Court must determine whether the parties and claims

in the pending action are subject to the clause.  *Id*. (citing *Roby v. Corp. of Lloyd's*, 996 F.2d

1353, 1358–61 (2d Cir. 1993)).  If the clause was reasonably communicated, is mandatory, and is

applicable to the parties and claims, then the court proceeds to the fourth stage of the analysis, at

which point the burden shifts to the party resisting transfer to prove that "enforcement would be

unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id*. at 383-84.

According to the Second Circuit, "where one party has shown an apparently governing forum selection clause, the party opposing litigation in the so designated forum must make a strong showing to defeat that contractual commitment." *Anwar v. Fairfield Greenwich, Ltd*., 742 F. Supp. 2d 367, 371 (S.D.N.Y. Sept. 14, 2010) (quoting *Asoma Corp. v. SK Shipping Co., Ltd*., 467 F.3d 817, 822 (2d Cir. Oct. 24, 2006) (internal quotation marks omitted); *New Moon Shipping Co. Ltd. v. Man B & W Diesel AG*, 121 F.3d 24, 32 (2d Cir. 1997) (A party opposing the enforcement of a presumptively enforceable forum selection clause on the basis of unreasonableness "bears a heavy burden.").  A forum selection clause is unreasonable if any of the following circumstances exist:

> (1) its incorporation into the agreement was the result of fraud or overreaching;
>
> (2) the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected forum;
>
> (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or
>
> (4) the clause contravenes a strong public policy of the forum state.

*Zaltz v. JDATE*, 952 F. Supp. 2d 439, 455 (E.D.N.Y. July 8, 2013) (quoting *Roby*, 996 F.2d at 1363); *Crede CG III, Ltd. v. 22nd Century Group, Inc*., No. 16-3103, 2017 WL 280818, at *10 (S.D.N.Y. Jan. 20, 2017) (quoting *Martinez*, 740 F.3d at 219, 227-28) (Post *Atlantic Marine*, the Second Circuit continues to "admonish district judges to 'determine whether a forum selection clause is invalid'… and to do so 'by examining four factors that, in effect, are four subparts that fall under the final prong of our four-part framework governing the effect of forum selection clauses.'")

A.   **Whether the Clause was Reasonably Communicated to the Party Resisting Enforcement**

Plaintiff argues that the forum selection clause was not reasonably communicated and on this grounds it should be deemed unenforceable. Pls.' Mem. at 15. Specifically, Plaintiff takes issue with the timing of the communication, as it did not occur until 1.5 years after Plaintiff commenced medical school. *Id.* By that time, Plaintiff asserts, he had "devoted years of his life studying, and spent many thousands of dollars on tuition." *Id.*; *see* Declaration of Ajay Bahl ("Bahl Decl.") [DE 120-1] ¶ 22. For these reasons, Plaintiff's only "reasonable option" was to accept the clause so that he could graduate from medical school and obtain his license to practice osteopathic medicine. *Id.*

Although Plaintiff's argument appears to focus on the timing of the communication rather than its content, the Court finds it helpful to begin its analysis by first addressing whether the manner in which the clause was communicated was appropriate. The Court will then discuss the timing of the communication at issue. To that end, the Court turns to the Defendant's Standard Operating Procedure for Candidate Registration, which outlines, step by step, how the communication is disseminated to registrants. Standard Operating Procedure for Candidate Registration ("SOP"), Annexed as Exhibit B to Declaration of Joseph Flamini in Support of Motion to Dismiss or Transfer Per 28 U.S.C. § 1404(a) and Forum Selection Clause [118-2] ("Flamini Decl.").

According to the SOP, once a registrant has selected which exam he/she wishes to take, the individual is directed to a virtual "Shopping Cart," at which he/she is presented with the following message: "If purchasing a COMLEX exam, you must agree to the Terms and Conditions before proceeding to payment." SOP, #2. Upon clicking the "View Terms" link, the registrant is presented with a list of "Terms and Conditions," which includes the "Choice of Law,

Forum Selection" provision at issue here. *Id.* At the bottom of the webpage, after the listed Terms and Conditions, there are two boxes, one indicating "Agree to Terms," and the other, "Disagree to Terms." *Id.* The student can only purchase the exam once he or she has agreed to Defendant's Terms and Conditions. *Id.* If a registrant fails to agree to the terms, then he or she is prevented from purchasing the exam. *Id.*

The above described mechanism constitutes a "click-wrap" agreement. *See Zaltz*, 952 F. Supp. 2d at 453. Courts in the Second Circuit have upheld such devices on the grounds that they require affirmative action in the form of clicking an "I agree" button "after being presented with a list of the terms and conditions of use in order to receive access to a particular product." *Id.* (citing *Schnabel v. Trilegiant Corp*., 697 F.3d 110, 130 n. 18 (2d Cir. 2012); *Centrifugal Force, Inc. v. Softnet Commc'n, Inc*., 08 Civ. 5463, 2011 WL 744732, at *7, (S.D.N.Y. Mar. 1, 2011); *TradeComet.com LLC I v. Google, Inc.*, 693 F. Supp. 2d 370, 377-78 (S.D.N.Y. 2010), *aff'd by* 435 Fed. Appx. 31 (2d Cir. July 26, 2011) and 647 F.3d 472 (2d Cir. July 26, 2011); *Person v. Google Inc*., 456 F. Supp. 2d 488, 496-97 (S.D.N.Y.2006); *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451 (E.D.N.Y. 2004)); *see Universal Grading Service v. eBay, Inc*., No. 8-cv-3557, 2009 WL 2029796, at *12 (E.D.N.Y. June 10, 2009) ("[C]ourts in this Circuit have held that a clear and unambiguous forum selection clause is "reasonably communicated" to a plaintiff where the plaintiff is required to assent to an online user agreement.") (collecting cases).

In light of these cases, the Court finds that the "click-wrap" agreement utilized here constitutes a reasonable communication. Moreover, the Court is unpersuaded that the timing of the communication was unreasonable. Plaintiff does not cite any case law in support of his argument. Further, the Court finds that it would be unreasonable to permit medical students to

back out of an obligation in connection with their studies, residencies, or fellowships etc., even where the terms and conditions of such obligation were not presented to them prior to medical school.  For these reasons the Court finds that the forum selection clause was reasonably communicated to Plaintiff, both in substance and in timing.

**B.    Whether the Clause was Mandatory and Whether the Parties and Claims are Subject to the Clause**

The forum selection clause at issue in this case is mandatory.  It explicitly states, in relevant part: "Candidate further expressly agrees that any claim, demand or complaint whatsoever by or for the candidate against the NBOME, or any of its employees, officers, directors or agents, *shall be brought* only in a court of competent jurisdiction in Marion County, Indiana, to the *exclusion* of all other courts and jurisdictions."  Flamini Decl. ¶ 26 (emphasis added); *see Scherillo*, 684 F. Supp. 2d at 323; *Paduano v. Express Scripts, Inc*., 55 F. Supp. 3d 400, 433 (E.D.N.Y. 2014) ("the language 'be litigated' after 'shall'...reinforces the mandatory quality of the forum selection clause.").  Moreover, the Court finds that the instant suit and the parties to it are subject to the clause, which provides that it governs "any claim, demand or complaint whatsoever by or for the candidate against the NBOME."  Because the forum selection clause here was reasonably communicated, and is mandatory and applicable to the instant suit, it is presumptively enforceable.  The burden now shifts to Plaintiff to prove that the clause is unreasonable.

**C.    Whether the Clause is Unreasonable**

As discussed above, a forum selection clause is unreasonable in the following circumstances:

> (1) its incorporation into the agreement was the result of fraud or overreaching; (2) the complaining party will be deprived of his day in court due to the grave inconvenience or unfairness of the selected

> forum; (3) the fundamental unfairness of the chosen law may
> deprive the plaintiff of a remedy; or (4) the clause contravenes a
> strong public policy of the forum state.

*Zaltz*, 952 F. Supp. 2d at 455 (*Roby*, 996 F.2d at 1363).

Plaintiff argues that the clause is unenforceable because its terms were not negotiated

with Plaintiff and NBOME exercised "overweening bargaining power."  Pls.' Mem. at 1.  By the

time he was presented with the clause, Plaintiff argues, he had "already invested years of his life

and hundreds of thousands of dollars into his medical career before ever knowing of the terms

and conditions set forth in NBOME's click-wrap agreement."  Pls.' Mem. at 1-2.  According to

Plaintiff, he was then left with no choice but to agree to the clause.  *Id*.  Non-negotiated form

contracts, however, such as the one at issue here, are not *per se* unenforceable.  In *Carnival*

*Cruises v. Schute*, the Supreme Court held that there are various reasons why a form contract

might be permissible:

> First, a cruise line has a special interest in limiting the fora in which
> it potentially could be subject to suit. Because a cruise ship typically
> carries passengers from many locales, it is not unlikely that a mishap
> on a cruise could subject the cruise line to litigation in several
> different fora. Additionally, a clause establishing ex ante the forum
> for dispute resolution has the salutary effect of dispelling any
> confusion about where suits arising from the contract must be
> brought and defended, sparing litigants the time and expense of
> pretrial motions to determine the correct forum and conserving
> judicial resources that otherwise would be devoted to deciding those
> motions. Finally, it stands to reason that passengers who purchase
> tickets containing a forum clause like that at issue in this case benefit
> in the form of reduced fares reflecting the savings that the cruise line
> enjoys by limiting the fora in which it may be sued.

*Id*. at 593-94 (citations omitted).  The Court finds that the benefits warranting the form contract

in *Carnival Cruise* are equally applicable in the instant case, which also involves a Defendant

that offers a good to individuals across the United States.

In connection with the second set of circumstances under which a clause may be deemed unreasonable — "the complaining party will be deprived of his day in court" — Plaintiff argues that his "dire financial straits" would preclude him from pursuing his claims in Indiana. Pl.'s Mem. at 2. In this regard, Plaintiff asserts that he is unemployed, has no money, has substantial student loans, and lives with his parents, on whom he depends for support. Pl.'s Mem. at 2-3. Plaintiff further articulates that he cannot afford an attorney in Indiana and, because he is on Medicaid, he can receive treatment only from doctors located in New York. Pl.'s Mem. at 3 n.1; Bahl Decl. ¶ 60. "Given his disabilities, it is untenable that Plaintiff could participate in a lengthy, stressful trial in Indiana, where his psychological treatment would be substantially burdened." Pl.'s Mem. at 3 n.1; Bahl Decl., ¶ 60.

In order for a court to repudiate a forum selection clause on such grounds, "trial in the contractual forum [must] be so gravely difficult and inconvenient that [the plaintiff] will for all practical purposes be deprived of his day in court." *M/S Bremen*, 407 U.S. at 18. The circumstances warranting repudiation are therefore "strictly construed." *Holck v. Bank of New York Mellon Corp*., 769 F. Supp. 2d 1240, 1251 (D. Hawaii Feb. 14, 2011) (citing *R.A. Argueta v. Banco Mexicano, S.A*., 87 F.3d 320, 325-27 (9th Cir. 1996); *Spradlin v. Lear Siegler Mgmt. Servs. Co*., Inc., 926 F.2d 865, 868-69 (9th Cir. 1991) (enforcing a forum selection clause that required the case be litigated in Saudi Arabia even though the plaintiff was required to leave that country within 10 days from the date of his termination of employment there)); *see also Universal Grading Service v. eBay, Inc*., No. 8-3557, 2009 WL 2029796, * 19 (E.D.N.Y. June 10, 2009) (upholding forum selection clause requiring plaintiffs to travel even though one of the plaintiffs suffered "from severe coronary artery disease, hypertension, and a prostate condition, which render it impossible for him to travel to California without suffering serious

consequences for his health").  For example, in *R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d

320 (9th Cir. June 20, 1996), the plaintiffs filed suit in the District of Hawaii in contravention of

a forum selection clause requiring them to do so in Mexico.  *Id.* at 321. The plaintiffs argued that

the clause was unreasonable on the grounds that if the case were transferred to Mexico, the

plaintiff would be "deprived of a fair hearing" and persecuted.  *Id.* at 325.  In support of their

position, the plaintiffs cited past immigration cases to demonstrate that plaintiff Argueta had

been persecuted previously.  *Id.*  Despite this information, the court affirmed the lower court's

determination that the plaintiffs had not met their burden of showing that the clause was

unreasonable.  *Id.* at 327.  The case was dismissed.  *Id.*  Moreover, the court in *Carron ex rel.*

*Carron v. Holland America Line-Westours Inc.*, 51 F. Supp. 2d 322, 326 (E.D.N.Y. 1999) upheld

a forum selection clause that required the plaintiffs to travel from New York to Washington

State, despite the fact that they would be required to miss school or work, and have to pay

"substantial fees for witnesses to travel from New York to Washington State."  *Id.* at 326.  The

Court held that these factors did not "demonstrate that the plaintiffs would be deprived of their

ability to vigorously prosecute their claims so that they will be deprived of their day in Court."

*Id.*  In yet another case, *Ehrenpresi v. Coogle*, No. 09-4192, 2010 WL 1194386, at *3-*4

(N.D. Ill. March 22, 2010), the court upheld a forum selection clause that would require the 82-

year-old plaintiff who resided in Illinois to litigate in New York. The court recognized that

"[m]odern communication technology may allow Plaintiff to be substantially involved in his case

without leaving Illinois."  *Id.* at *4.

    In support of his position that he will be deprived of his day in court, Plaintiff cites

*Jelcich v. Warner Bros.*, No. 95-1016, 1996 WL 209973 (S.D.N.Y. April 30, 1996).  *Jelcich*,

however, is distinguishable from the instant case in some important ways.  First, *Jelcich* involved

an employment contract, not a form contract between a supplier of a good and private consumers. *Id*. at *1. Moreover, the court in *Jelcich* determined that there was evidence of coercion and overreaching. *Id*. at *2. Here, the court has already concluded that coercion and overreaching are lacking in the instant case. The Court therefore determines that *Jelcich* does not warrant a finding of unenforceability. Moreover, as Defendant points out, *Jelcich* pre-dates *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, in which the Supreme Court held that in the context of a forum selection clause, "private interests" of the parties' should be disregarded. 134 S. Ct. at 581; *but see Crede CG III, Ltd.*, 2017 WL 280818, at *10 (quoting *Martinez*, 740 F.3d at 219, 227-28) (Even after *Atlantic Marine Const. Co., Inc.*, district judges are encouraged to "'determine whether a forum selection clause is invalid'…and to do so 'by examining four factors that, in effect, are four subparts that fall under the final prong of our four-part framework governing the effect of forum selection clauses.'")

Notwithstanding the holding of *Atlantic Marine Const. Co., Inc.*, the Court is not unsympathetic to Plaintiff's financial situation. Plaintiff, however, fails to present evidence of his financial hardship, and although Plaintiff is unable to work as a doctor of osteopathic medicine, nothing in Plaintiff's submissions suggest that he is unable to get a job in another field. The Court further notes that modern technology makes it possible for a plaintiff to "have his 'day in court without ever setting foot in a courtroom." *Effron v. Sun Line Cruises*, Inc. 67 F.3d 7 (2d Cir. 1995) (citing *Gray v. Great Am. Recreation Ass'n*, 970 F.2d 1081, 1082 (2d Cir. 1992)). Plaintiff's need to travel may therefore be limited. *See id*. Further, it is the Court's understanding that Plaintiff is already involved in litigation with Defendant in Indiana and has even retained counsel there. Def.'s Mem. at 5; Pl.'s Mem. at 10 n. 4.

Plaintiff does not appear to set forth arguments in connection with (3) above —
"fundamental unfairness of the chosen law."  The Court will therefore proceed to (4) and
consider whether the clause contravenes a strong public policy in New York.  Plaintiff argues
that it does, and in doing so cites *Red Bull v. Associates v. Best Western Int'l*, 686 F. Supp.
447 (S.D.N.Y. 1988), *aff'd by* 862 F.2d 963 (2d Cir. 1988).  The plaintiff, Red Bull Associates,
owned and operated an Inn in Poughkeepsie, New York and was a member of Best Western.  *Id.*
at 448.  Each member hotel was inspected "for maintenance and housekeeping at least twice a
year."  *Id.*  Red Bull entered into a contract with the Westchester Department of Social Services
pursuant to which the hotel would provide rooms to be used for temporary housing for homeless
families.  *Id.* at 449.  Approximately 80% of those tenants were black or Hispanic.  *Id.*  The
hotel's membership was subsequently terminated and the hotel attributed the termination to
racial animus.  *Id.*  The defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) or to
transfer pursuant to 28 U.S.C. §1404(a).  *Id.* at 448.  The Court declined to enforce the forum
selection clause on the grounds that the local population's interest in remedying discrimination
afflicting their community warranted keeping the suit in New York.  *Id.* at 452.  In this regard,
the court explained that "[i]t is likely to be of far less immediate concern to jurors living in
Phoenix, Arizona whether or not racial discrimination has deprived citizens of another state
thousands of miles away of the benefits sought to be protected by the Civil Rights Acts."  *Id.*

According to Plaintiff, under *Red Bull*, transferring this case, which involves violations of
Plaintiff's civil rights, would contravene New York public policy.  Pl.'s Mem. at 5.  However, the
court in *Sepanski v. Janiking, Inc.*, 822 F. Supp. 2d 309 (W.D.N.Y. 2011), also cited by Plaintiff,
explained that:

> Red Bull and its progeny do not hold that "forum selection clauses
> are never enforceable in civil rights actions; rather, Red Bull teaches

> that the district court, upon consideration of the alleged violations
> and the particular circumstances of the parties and the action, may
> in its discretion find cause to ignore the general rule of the
> enforceability of valid forum selection clauses."

*Sepanski*, 822 F. Supp. 2d at 314 (citing *Woolf v. Mary Kay Inc.,* 176 F. Supp. 2d 642, 649 (N.D.

Tex. Sept. 28, 2001); *Lurie v. Norwegian Cruise Lines, Ltd.,* 305 F. Supp. 2d 352, 363

(S.D.N.Y.2004); *P & J G Enters., Inc. v. Best Western Intern., Inc.,* 845 F. Supp. 84, 90

(N.D.N.Y.1994)).  Considering the particular circumstances of this case, the Court finds that *Red

Bull* does not warrant a denial of Defendant's motion.  Although Plaintiff resides in New York,

NBOME administers the examinations to students and graduates across the country.  The effects

of NBOME's actions would therefore not be limited solely to a local community.  Moreover,

Plaintiff's claim involves a private testing accommodation, not public housing.  The Court finds

that the policy concerns in *Red Bull* which persuaded the court to deny transfer, are not present in

the instant case.

### D.    Whether the Clause is Unconscionable

Plaintiff further argues that "[t]he terms of the click-wrap agreement are so oppressively

one-sided and harsh that they warrant a finding of substantive unconscionability."  Pl.'s Mem. at

20.  Defendant contends, however, that "[a]ny '[d]isparity in bargaining power alone is not

enough [to] make an adhesion contract unconscionable; there needs to be a showing of

unwillingness or unawareness."  Def.'s Mem. at 8.  The only provision relevant to the court's

analysis in this case is the forum selection clause.  The Court is therefore unpersuaded by

Plaintiff's citation to other provisions of the click-wrap agreement in support of his position that

the agreement, as a whole is unconscionable.

Prior to determining whether the forum selection clause is unconscionable, as a threshold

matter, the Court must determine which law governs the inquiry.  The Court turns to *Martinez v.*

*Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014) for guidance.  In *Martinez*, the Court held that

"where a contract contains both a valid choice-of-law clause and a forum selection clause, the

substantive law identified in the choice-of-law clause governs the interpretation of the forum

selection clause, while federal law governs the enforceability of the forum selection clause." *Id.*

at 214.  Here, the agreement at issue also contained a choice of law clause which designated

Indiana law as the governing body of law with regard to the terms and conditions of the

agreement.  Flamini Decl. ¶ 26.

       Under Indiana law, "[a] standardized contract is not unenforceable merely because of the

unequal bargaining power of the parties"…"there must also be a showing that the contract is

unconscionable, i.e., one which contains unreasonable or unknown terms and is the product of

inequality of bargaining power." *Grott v. Jim Barna Log Systems-Widwest, Inc*., 794 N.E.2d

1098, 1102 (Ind. Ct. App. 2003) (citing *Rumple v. Bloomington Hosp*., 422 N.E.2d 1309, 1313

(Ind. Ct. App. 1981)); *see Sanford v. Castleton Health Care Center*, LLC, 813 N.E.2d 411, 417

(Ind. Ct. App. 2004) ("[A] contract is unconscionable if a great disparity in bargaining power

exists between the parties, such that the weaker party is made to sign a contract unwillingly or

without being aware of its terms.") (quoting *White River Conservancy Dist. v. Commonwealth

Eng'rs, Inc*., 575 N.E.2d 1011, 1017 (Ind. App. 1991)); *see also Farm Bureau General Ins. Co.

of Michigan v. Sloman*, 871 N.E.2d 324, 329 (Ind. Ct. App. 2007) ("A contract is unconscionable

'if there exists a great disparity between the parties which leads the weaker party to sign the

contract unwillingly or without awareness of its terms.'") (quoting *Horner v. Tilton*, 650 N.E.2d

759, 763 (Ind. Ct. App. 1995)).  In order for a contract to be considered unconscionable, it "must

be 'such as no sensible man not under delusion, duress or in distress would make, and such as no

honest and fair man would accept.'"  *Sanford v. Castleton Health Care Ctr*., LLC, 813 N.E.2d

411, 417 (Ind. Ct. App. 2004) (internal quotation marks omitted).  Here, Plaintiff knowingly

signed Defendant's click wrap agreement and there are no allegations of fraud or deceit.  The

Court can appreciate Plaintiff's argument that medical students are left with little to no choice

but to agree to Defendant's Terms and Conditions if they want to pursue a career in osteopathic

medicine.  However, the Court is far from convinced that "no sensible man not under delusion,

duress or in distress would make, and such as no honest and fair man would accept" the terms of

the forum selection clause.

### E.    Mutuality

Plaintiff contends that the contract is an illusory agreement "because there is nothing in

the contract that prevents NBOME from unilaterally changing any part of the contract, including

the 'Choice of Law, Forum Selection provision."  Pl.'s Mem. at 18.  Defendants counter,

however, citing the first provision within the Terms and Conditions:

> 1. Bulletin of Information Legally Binding. The candidate intends
> to be and is legally bound by all the terms and conditions set
> forth in the most recently published NBOME Bulletin of
> Information, including all modifications, amendments and
> supplements thereto, in effect as of the dates the candidate
> establishes an account with the NBOME or registers for,
> schedules or takes any NBOME examination. The most recent
> edition of the Bulletin of Information is published by the
> NBOME on its website.

Defendant argues that based on this language, Plaintiff is bound only to those terms that are in

effect as of the date that he established an NBOME account or registered for an exam.  Def.'s

Reply Memorandum in Further Support of its Motion to Dismiss or Transfer ("Def.'s Reply")

at 6.

Plaintiff relies on *Harris v. Blockbuster*, 622 F. Supp. 2d 396, 398-99 (N.D. Tex. 2009) to support his position.  Pl.'s Mem. at 17.  At issue in *Harris* was the following arbitration provision:

> Blockbuster may at any time, and at its sole discretion, modify these Terms and Conditions of Use, including without limitation the Privacy Policy, with or without notice. Such modifications will be effective immediately upon posting. You agree to review these Terms and Conditions of Use periodically and your continued use of this Site following such modifications will indicate your acceptance of these modified Terms and Conditions of Use. If you do not agree to any modification of these Terms and Conditions of Use, you must immediately stop using this Site.

*Id*. at 398-99.  The plaintiff in *Harris* argued that the agreement was illusory on the grounds that Blockbuster reserved the right to unilaterally alter the terms and conditions of the agreement. *See id*. at 397.  The court in *Harris* determined that there was "nothing to suggest that once published the amendment would be inapplicable to disputes arising, or arising out of events occurring, before such publication."  *Id*. at 399 (quoting *Morrison v. Amway Corp*., 517 F.3d 248 (5th Cir. Feb. 6, 2008).  Here, however, Defendant's Terms and Conditions provide that the terms in effect at the time the candidate has created an account or registered for an exam are the terms by which the candidate is legally bound.  The Court is therefore unpersuaded by *Harris* and finds that the clause at issue here is not void for lack of mutuality.

## F.    Parallel Proceedings

Transfer of this case to Indiana would not be judicially economical, according to Plaintiff, since the claims against NBOME are "inextricably intertwined" with those asserted against the other Defendants.  Pl.'s Mem. at 13-15.  Plaintiff has not cited a single case in support of his position.  *Id.*  However, "the possibility of multiple parallel proceedings is not sufficient to rebut the presumption of enforceability of an otherwise valid forum selection clause

entered into by the parties." *Glyphics Media, Inc. v. M.V. Conti Singapore*, No. 2-4398, 2003

WL 1484145, *5 (S.D.N.Y. 2003) (citing *La Fondiaria Assicurazione v. Ocean World Lines*, No.

02 Civ. 40, 2002 WL 31812679, at *5 (S.D.N.Y. Dec. 12, 2002); *Street, Sound Around*

*Electronics v. M/V Royal Container*, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999)); *Paduano*,

55 F. Supp. 3d at 434-5 ("[T]he efficiency and economy achieved by trying interrelated claims in

one forum should not trump the forum-selection clauses.").

## IV.    <u>CONCLUSION</u>

Based on the foregoing analysis, Defendant's motion to transfer venue, pursuant to

§1404(a) is GRANTED.


**SO ORDERED.**

Dated:  Central Islip, New York
        March 31, 2017


<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge