| | |
|---|---|
| **Ajay Bahl,**            Plaintiff, <br><br> v. <br><br> **New York College of Osteopathic Medicine of New York Institute of Technology,** <br><br>            Defendant. | No. 2:14-cv-04020-NRM-LGD <br><br> **Opinion and Order** |

**NINA R. MORRISON**, United States District Judge:

      This motion for summary judgment requires the Court to consider the reasonableness of certain proposed accommodations for a graduate student's disability under section 504(a) of the Rehabilitation Act of 1973 ("Rehabilitation Act") and New York State Human Rights Law ("NYSHRL"). In this case, the Court must determine (1) whether there is evidence from which a reasonable jury could find that a college of osteopathic medicine violated the relevant provisions of these statutes when it denied a disabled student's request for six months of additional leave from school to receive further psychopharmacologic, cognitive behavioral, and speech therapy treatments and prepare for an examination that he was required to pass in order to graduate, and (2) whether the defendant's counter-proposal of a shorter period of leave (with certain additional conditions) satisfied its legal obligation to reasonably accommodate the student's disabilities.

      In the fall of 2013, Plaintiff Ajay Bahl, who had by that time been diagnosed with certain mental health and learning disabilities, requested six months of leave from the Doctor of Osteopathic Medicine ("D.O.") program at the New York Institute of Technology College of Osteopathic Medicine ("NYITCOM" or "NYIT"). Although Bahl had requested and been granted additional periods of leave during his tenure as an NYIT student, he

requested this additional six months of leave because, he contended, in light of his disabilities, he required that additional time to obtain disability-related medical treatment and prepare for the COMLEX 2, a test he needed to pass as the final graduation requirement from NYIT.

NYIT rejected Bahl's request. Shortly thereafter, it made a counter-proposal, offering him just over three months of leave that would be contingent upon securing certain testing accommodations from the National Board of Osteopathic Medical Examiners ("NBOME"), the entity that administers the COMLEX 2. Bahl declined NYIT's proposal, and the parties were unable to reach agreement on any other accommodation.

Bahl filed this lawsuit in 2014. A year later, Bahl filed an amended complaint that contained seventeen claims for relief under federal, state, and local laws. *See* Am. Compl. ¶¶ 99–265, ECF No. 77. Discovery eventually concluded and on March 1, 2022, NYIT moved for summary judgment on all claims. *See* Def.'s Mot. for Summ. J. 49, ECF No. 235-5.[1]

On December 30, 2022, through counsel, Bahl filed a brief in partial opposition to Defendant's motion. In that brief, Plaintiff conceded that Defendant was entitled to summary judgment on all but two of the claims in the Amended Complaint and asserted that Bahl would no longer pursue those claims. The claims in which Bahl, through counsel, did oppose summary judgment each concern a failure to accommodate Bahl's disability under section 504(a) of the Rehabilitation Act of 1973 ("Rehabilitation Act") and New York State Human Rights Law ("NYSHRL") and arise from the same factual dispute: whether NYIT improperly denied Bahl the six-month period of leave from school he requested to prepare for the COMLEX-2 exam in September 2013, or otherwise violated his right to a reasonable accommodation for his disability in the parties' communications following Bahl's September 2013 leave request. *See* Pl.'s Opp'n, ECF No. 236; *see also* Am. Compl., ¶¶ 126–35, 243–54 (listing claims).

For the reasons stated below, NYIT's motion for summary judgment on Bahl's Rehabilitation Act and NYSHRL failure to accommodate claims is

---

[1] All page numbers refer to ECF page numbers except where noted.

DENIED. The Court reserves decision on any outstanding claims, pending further briefing on the question of whether Bahl, who recently terminated his counsel, has waived his right to oppose summary judgment on those claims.

## I. BACKGROUND

The Court summarizes only the facts and procedural history relevant to the motion for summary judgment as to Bahl's September 2013 request for leave, noting (where applicable) all material facts in dispute and construing the factual record in the light most favorable to Bahl as the non-movant.[2]

### A. Bahl begins at NYITCOM and is diagnosed with ADHD and Generalized Anxiety Disorder

In 2008, Bahl began a four-year osteopathic medicine program at NYIT College of Osteopathic Medicine. *See* Pl.'s 56.1 Statement ¶¶ 1–5, 27, ECF No. 236-1. To graduate from the program at NYIT, Bahl needed to take two exams: the COMLEX 1 exam and the COMLEX 2 exam, which consisted of two parts: the performance evaluation ("PE") and cognitive evaluation ("CE"). NBOME administers the COMLEX 1 and COMLEX 2. *See* Pl.'s 56.1 Statement ¶¶ 10–14, 115.

In July 2011, after Bahl withdrew from the D.O. program for medical reasons, Bahl's psychiatrist Dr. Lenard Adler diagnosed Bahl with ADHD and generalized anxiety disorder ("GAD"). Pl.'s 56.1 Statement ¶¶ 73–74, 93–96. In a letter to the school, Dr. Adler advised that Bahl was undergoing an ongoing adjustment to his medications and treating with another medical provider for psychotherapy; Dr. Adler noted at the end of that month that Bahl's symptoms were improving. Pl.'s 56.1 Statement ¶¶ 95–96. The next month, Dr. Paul Yellin, a learning specialist, issued a report in which he opined that Bahl should receive "two times the standard time" when taking examinations; however, Bahl did not provide this report to NYITCOM until May 2013. Pl.'s 56.1 Statement ¶¶ 106–09. By October 2012, Bahl had successfully completed his third- and fourth-year clinical clerkships and

---

[2] Bahl's statement under Local Civil Rule 56.1 disputed the materiality of a number of facts, but not the underlying facts in those disputes.

passed the COMLEX 1; he only needed to pass the COMLEX 2 to graduate. *See* Pl.'s 56.1 Statement ¶¶ 46, 112, 115. Although Bahl had previously requested (and been granted) certain periods of leave from NYIT to enable him to complete certain graduation requirements, by this time he had achieved what NYIT would later summarize as an "impressive academic history." Pl.'s 56.1 Statement ¶ 228 (quoting email from Jordan Thompson III, Assistant General Counsel at NYIT, to Bahl's then-counsel).

### B. Bahl attempts to pass the COMLEX 2

After scheduling and postponing the COMLEX 2 several times, Bahl took and failed both parts of the COMLEX 2 exam in December 2012. *See* Pl.'s 56.1 Statement ¶¶ 122, 132. Under school policy, a student who did not pass the COMLEX 2 before the student's graduation date was eligible for a 180-day leave of absence to study for and retake the COMLEX 2. Pl.'s 56.1 Statement ¶ 116; *see also* Pl.'s 56.1 Statement ¶ 136 (describing school policy); Oral Argument Tr. ("Tr.") 26:24–27:3 (same). In other words, this six-month leave was equally available to both disabled and non-disabled students at NYIT who needed to retake the COMLEX 2 exam. Bahl applied for and received a standard, 180-day COMLEX 2 leave of absence under school policy. *See* Pl.'s 56.1 Statement ¶¶ 135–37.

Bahl applied to NBOME for exam accommodations in May 2013. In connection with this request, he forwarded Dr. Yellin's report to NYITCOM and asked Assistant Dean Felicia Bruno to submit an addendum supporting his request for testing accommodations from NBOME. Bruno declined, stating that she believed that it was not her position to opine to NBOME about whether NBOME should give Bahl COMLEX 2 Exam accommodations. Pl.'s 56.1 Statement ¶ 161. Ultimately, NBOME denied Bahl's request for testing accommodations. *See* Pl.'s 56.1 Statement ¶¶ 149–52, 155, 161–62, 167–78, 170–73.

In June 2013, while his request to NBOME was pending, NYITCOM told Bahl that NYITCOM had changed its policies to place students who did not pass the COMLEX 2 by their graduation date into a "directed study course" to prepare for the COMLEX 2 Exam, and Bahl and one other student were placed in a ten-week directed study course for the COMLEX 2 that ran from July 2 to September 9, 2013. Pl.'s 56.1 Statement ¶¶ 177–79, 180–82.

### C. Bahl seeks an additional six months of leave to prepare for the COMLEX 2 exam

By September 20, 2013, shortly after the directed study course ended, Bahl sought an accommodation directly from NYIT: a six-month medical leave.[3] Pl.'s 56.1 Statement ¶¶ 116, 124–33, 177–82, 193–206. NYIT denied Bahl's request. Pl.'s 56.1 Statement ¶ 220. In doing so, Achtziger told Bahl that he did not qualify for medical leave since he was not an active student. *Id.*

On October 21, 2013, upon Bahl's request that NYIT reconsider its denial, NYIT Assistant General Counsel Jordan Thompson III wrote to Bahl's then-counsel and proposed the following:

> Based upon the facts set forth above, and reviewing the supporting documentation you have provided regarding Mr. Bahl's alleged learning disability, NYITCOM has concluded as follows with respect to your client's request for a review of the determination denying him an accommodation in connection with his retaking of the COMLEX Level 2 exam:
>
> • Effective immediately NYITCOM is placing Mr. Bahl on a "Withdrawal for Financial Aid Purposes Only" status[.]
>
> • NYITCOM agrees to approve Mr. Bahl's application for a retest of the COMLEX Level 2 exams with the National Board of Osteopathic Medical Examiners ("NBOME"), provided that (i) NBOME grants Mr. Bahl a testing accommodation for his alleged learning disability (the "Testing Accommodation"), and (ii) the test date will allow the results to be available by January 31,

---

[3] Bahl and NYIT dispute whether this request was made in August 2013, when Bahl had contacted NYIT's Office of Disability Services, or in September 2013, when Bahl had met with Mary Ann Achtziger ("Achtziger"), who was NYITCOM's then-Associate Dean of Student Affairs. Either way, the exact date of Bahl's request is immaterial for the purposes of deciding this motion. Pl.'s 56.1 Statement ¶¶ 116, 124–33, 177–82, 193–206.

2014.

- NYITCOM will not approve Mr. Bahl's application if the NBOME does not grant a Testing Accommodation.

- If Mr. Bahl fails to take and pass the COMLEX Level 2 exam with the Testing Accommodation on or before January 31, 2014, NYITCOM will dismiss Mr. Bahl on that date.

Pl.'s 56.1 Statement ¶ 228 (quoting Catalano Decl. Ex. 40, ECF No. 235-6). Thompson continued, "NYITCOM does not in fact believe that any accommodation is warranted as there is nothing to suggest in Mr. Bahl's impressive academic history, including his tenure at NYITCOM, that he requires an accommodation to succeed based on a purported disability." Pl.'s 56.1 Statement ¶ 229 (quoting same).

Bahl, who was placed on "withdrawn" status following Thompson's email, sought behavior therapy and speech therapy. He did not seek reconsideration of NBOME's denials of his requests for testing accommodations. *See* Pl.'s 56.1 Statement ¶ 230–33.

### D. Procedural history

In 2014, Bahl sued NYIT, NBOME, and North Shore Long Island Jewish Plainview Hospital out of events arising from (i) his clerkship at the hospital that led to his medical leave, and (ii) his requested leave concerning the COMLEX 2. *See* Compl., ECF No. 1. In 2015, Bahl filed an amended complaint. *See* Am. Compl., ¶¶ 88–265, ECF No. 77.

NYIT, the sole defendant now remaining in this suit, served its motion for summary judgment on March 1, 2022. *See* Def.'s Mot. 49. This suit was reassigned to this Court in October 2022 as a matter of routine court administration. On December 30, 2022, counsel for Bahl served opposition papers, which stated: "Plaintiff now withdraws his claims for disparate treatment discrimination, retaliation, hostile learning environment, aiding and abetting discrimination, equal protection, breach of an implied agreement, negligent infliction of emotional distress, negligent misrepresentation, deceptive practices, and his New York City Human Rights

Law claims." *See* Pl.'s Opp'n 1. Bahl's opposition brief then argued that summary judgment should be denied on the remaining failure to accommodate claims under the Rehabilitation Act and NYSHRL.[4] *Id.* at 5. NYIT served its reply on these claims and filed the bundled, fully-briefed motion on February 21, 2023. *See* Def.'s Reply, ECF No. 237. This Court held oral argument on the afternoon of June 30, 2023.

On the morning of oral argument, Bahl emailed the Court and counsel to request an "emergency adjournment." *See* Pl. Letter, ECF No. 241 (June 30, 2023).[5] Bahl stated that he did not wish to be represented by his counsel. *Id.* He wrote, "Several of my claims have apparently been withdrawn without my authorization, and in some cases against my explicit instruction." *Id.* The Court allowed him to appear at oral argument for the limited purpose of assessing whether Bahl wished to proceed *pro se* or through his counsel. Tr. 2:1–7. But, the Court explained, the opposition brief in question had been filed months earlier, oral argument had been set to discuss the remaining failure to accommodate claims, and in light of the parties' and the Court's preparation for argument, that portion of the Defendant's motion would be heard that day. Tr. 12:4–8. After some discussion and an opportunity to confer off the record with his then-counsel, Bahl informed the Court that he wanted his counsel to argue the failure to accommodate claims on his behalf. Tr. 16:16–19. The Court heard argument from counsel, reserved decision, and instructed Bahl to inform the Court within one week whether he wished to continue to be represented by his then-counsel or not.

---

[4] Bahl's opposition also discussed failure to accommodate claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, that NYIT argued were not in the Amended Complaint (which was filed by another prior counsel for Bahl). *See* Pl.'s Opp'n 1, 6; Def.'s Reply 4. Oral argument proceeded on the Rehabilitation Act and NYSHRL claims. *See* Tr. 17:1–5. In any event, and as discussed below, these claims are evaluated under the same standards as the ADA. *See* Part III.A, *infra*.

[5] Bahl's letter is dated June 29, 2023, but Bahl emailed the letter to opposing counsel, his then-counsel, and the Court on June 30, 2023 at 8:16 a.m.

On July 7, 2023, Bahl filed a letter stating that he intended to seek other counsel, and his counsel filed a motion to withdraw. *See* Letter dated July 7, 2023, to Judge Morrison from Ajay Bahl, ECF No. 239 (July 7, 2023); Letter Motion to Withdraw as Attorney Conditional on Attorney's Lien, ECF No. 240 (July 11, 2023). The Court has given the parties the opportunity to brief the question of whether Bahl has waived his right to oppose summary judgment as to the remaining claims. Order dated July 12, 2023. In the meantime, it issues this decision on the claims whose merits were the subject of oral argument.

## II. LEGAL STANDARD

Summary judgment is appropriate only when the party moving for summary judgment shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). To present a "genuine" issue of material fact sufficient to defeat a motion for summary judgment, "the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (internal quotation marks omitted). At the summary judgment stage, a court must construe the record "in the light most favorable to the non-moving party," and "resolv[e] all ambiguities and dra[w] all reasonable inferences" in that party's favor." *Id.* at 240.

## III. DISCUSSION

The legal standards that govern the merits of NYIT's motion are not disputed by the parties. As discussed further below, to obtain summary judgment on Bahl's failure to accommodate claim under the Rehabilitation Act and NYSHRL, NYIT must show that the accommodation it offered Bahl was "plainly reasonable" as a matter of law. Alternatively, even if Bahl can show that his own proposed accommodation was a reasonable one, summary judgment may still be granted if NYIT demonstrates that Bahl's request would have created an undue hardship for NYIT or required a substantial

modification of its educational program.

### A. Rehabilitation Act and NYSHRL

Under section 504 of the Rehabilitation Act—the nation's first federal statute enacted to protect the civil rights of persons with disabilities[6]— "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sci.*, 804 F.3d 178, 186 (2d Cir. 2015) (quoting 29 U.S.C. § 794(a)). Courts interpret the NYSHRL "coextensively" with the Rehabilitation Act, *Williams v. MTA Bus Co.*, 44 F.4th 115, 124 (2d Cir. 2022), and treat claims under both statutes through the same legal standards as claims under the Americans with Disabilities Act. *See Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94, 95 n.2 (2d Cir. 2015) (citations omitted).

To establish a prima facie violation of the Rehabilitation Act, a plaintiff must show (1) that the plaintiff is a "qualified individual" with a disability; (2) that a defendant "receive[s] federal funding;" and (3) that the plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citations omitted). Under the first two prongs, NYIT does not contest Bahl's disability status and does not

---

[6] In 1973, Congress passed the Rehabilitation Act, partially in response to federal litigation concerning the educational rights of children with disabilities. Spencer C. Malone, Charles J. Russo & Allan G. Osborne, Jr., *Reasonable Accommodations for Students in Higher Education Under Section 504 of the Rehabilitation Act*, 409 ED. LAW REP. 610, 610 (2023). Section 504, one of the statutes at issue in this case, "attached an antidiscrimination mandate to federal funds." Karen M. Tani, *Disability Benefits as Poverty Law: Revisiting the "Disabled State,"* 170 U. PA. L. REV. 1687, 1719 n.33 (2022). It has since served as "essentially the disability equivalent of Title VI of the 1964 Civil Rights Act and Title IX of the Education Amendments of 1972." *Id.*

dispute that the Rehabilitation Act applies to NYIT for purposes of this motion. *See* Def.'s Mot. at 26 n.7, 28–29. Under the third prong, an educational institution may be found liable if it fails to "offer reasonable accommodations for a student's known disability unless the accommodation would impose an undue hardship on the operation of its program, or fundamentally alter the nature of the service, program, or activity." *Dean*, 804 F.3d at 187.

Thus, to determine whether NYIT is entitled to summary judgment, this Court must decide whether the accommodation NYIT offered to Bahl (a three-month leave of absence from NYIT, with certain contingencies related to his earlier request for testing accommodations from NBOME) was "plainly reasonable" as a matter of law. If it was not, the Court must then consider whether, under the applicable burden-shifting framework, a jury could find that Bahl's original proposed accommodation—a six-month-leave of absence—would have been reasonable. *See id.* at 189.

### B.  Was NYIT's counter-proposal to Bahl a "plainly reasonable" accommodation?

"Where a defendant's educational institution has implemented or offered an accommodation, the institution will be entitled to summary judgment only if the undisputed record reveals that the plaintiff was accorded a 'plainly reasonable' accommodation." *Id.* at 188–89 (citations omitted). While the reasonableness of an accommodation is a "fact-specific question that often must be resolved by a factfinder," the "plain reasonableness" of an accommodation "ends the analysis" and obviates the need to engage in a burden-shifting analysis. *Noll*, 787 F.3d at 94 (internal quotation marks omitted).

Instructive here is the Second Circuit's 2015 opinion in *Dean v. University at Buffalo School of Medicine and Biomedical Sciences*. 804 F.3d at 178. There, the court found that a jury question remained as to the reasonableness of a school's rejection of a medical student's proposed three-month leave to study for a licensing exam, which precluded summary judgment on that issue. *Id.* at 190. After failing the exam twice, the student became disabled within the meaning of the applicable statutes, experiencing increased symptoms of depression right before he was slated for his third and

final permitted examination-retake. *Id.* at 183. The student requested an accommodation in the form of a three-month leave of absence before retaking the exam, since he was informed that his psychiatric medications would need six to eight weeks to take full effect, and he contended that he needed additional time, with his symptoms treated by medication, to study thereafter. *Id.* at 188. The school denied the request but offered an alternative: a total of ten weeks of leave. The court found that, "by any measure," the school's proposed accommodation did not give the student post-medication study time equivalent to the "six to eight weeks allegedly afforded, as a matter of school policy, to medical students who had also failed two prior attempts." *Id.* at 189. The fact that the school had given earlier periods of leave before the student requested a disability accommodation did not establish that the school had offered a "plainly reasonable" accommodation for the student's later-developed disability. *Id.* at 182–83, 186–89. Considering the school's policy affording six to eight weeks of leave for students without disabilities, a juror "could reasonably infer that the abbreviated study period encompassed within [the plaintiff student's] leave would not have been effective." *Id.* at 189. In sum, the *Dean* court concluded that the school's proposed accommodation of ten weeks was not "plainly reasonable."

Here, Bahl requested a six-month medical leave of absence in September 2013 that would have allowed him to take the COMLEX 2 in February 2014. NYITCOM rejected this request, but countered with a different proposed accommodation: what it deemed a "withdrawal for financial aid purposes" and an offer to approve Bahl's application for a retest if he secured an accommodation from NBOME for the COMLEX 2 *and* if his NBOME test results would be available by January 31, 2014 (meaning that Bahl would have approximately three months to study for and take the NBOME exam, rather than the six months he had requested). *See* Pl.'s 56.1 Statement ¶¶ 207, 227–29.

This Court concludes that summary judgment is inappropriate to resolve the parties' dispute over these proposed accommodations. After drawing every reasonable inference in Bahl's favor, a jury could find that NYIT's proposed accommodation was *not* "plainly reasonable" as a matter of law when considering the two key terms of NYIT's proposed accommodation:

(1) the length of time and (2) the condition that Bahl secure an accommodation from NBOME and receive his COMLEX 2 test results by January 31, 2014.

### 1. Length of leave ("withdrawal" time)

NYIT offered Bahl approximately three months away from the program (requiring that he complete his preparation and sit for the COMLEX 2 test in time for his scores to be available by January 31, 2014). At oral argument, NYIT clarified that there was "no difference" between the medical leave of absence Bahl requested and "withdrawal for financial aid purposes only" on which NYIT offered to place Bahl. *See* Tr. 19:10–24. Yet, when asked why NYIT had limited the length of leave time (rather than agree to Bahl's requested six months), counsel for NYIT was not certain as to NYIT's reason for this limitation. NYIT's counsel observed that Bahl's request came in around the start of the new semester, September 19, and NYIT's proposed end date of January 31 coincided with the end of that semester. *See* Tr. 23:9–24:2. It may well be that NYIT officials concluded it would be convenient or otherwise preferable for them to have certainty about Bahl's graduation plans before the next academic semester. But NYIT cited no facts in its motion papers or at oral argument to demonstrate why this three-month period was itself a plainly reasonable *accommodation* of Bahl's disability.

NYIT argues that because Bahl had already taken a "six-month leave [that] expire[d] in June" plus "ten more weeks after June" of a directed-study course (approximately eight months of time away from the core program program) prior to September 2013, it was *per se* reasonable to deny his request for an additional six months to study for the COMLEX 2. *See* Tr. 25:5–13; Tr. 25:16–17; Def.'s Mot. 31. The Court disagrees. Indeed, this argument appears to be foreclosed by *Dean*, in which the Second Circuit concluded that a school having already given a medical student leave to study prior to becoming disabled did not make the school's rejection of a subsequent leave request *per se* reasonable. 804 F.3d at 188–89. Like the student in *Dean*, Bahl had previously taken leave from NYIT's program—through policies NYIT offered to disabled and non-disabled students alike—which totaled approximately eight months, before he requested an additional period of six months. It was only when requesting his final six-month leave in

September 2013, however, that he cited his disabilities and need for related medical treatment as the reason for his leave request. While school officials may have become impatient with Bahl's extended therapy, rescheduled exams, and additional requests for leave, NYIT—in light of Bahl's disability—had a legal obligation to consider each accommodation and leave request on its merits. Because NYIT has not shown that it actually did so here—and, further, has not shown that its proposed shorter leave period was a "plainly reasonable" accommodation of Bahl's disability—summary judgment is inappropriate.

### 2. NBOME-related conditions

Similarly, NYIT also fails to show that the second feature of its proposed accommodation—that Bahl succeed in obtaining certain testing accommodations from NBOME before retaking the COMLEX 2 exam, and that he complete the exam within approximately three months—was *per se* reasonable. Taking all facts and drawing all inferences in the light most favorable to Bahl, a jury could find that NYIT's insistence on making Bahl's leave from NYIT contingent on a third party's grant of testing accommodations was not reasonable, particularly since NBOME had already denied his accommodation request.

NYIT argues that it was reasonable to condition Bahl's leave on a parallel testing accommodation by NBOME because neither Bahl nor his treating physicians could "guarantee" that an additional six months of medical treatment, standing alone, would have enabled Bahl to pass the COMLEX 2 exam. Def.'s Mot. at 33. But a student with a disability is entitled to reasonable accommodations regardless of his or her ultimate success in the program. And with good reason. For while a student with a disability may be more *likely* to pass an examination with certain testing accommodations, it is hard to see how any student—regardless of ability—could ever "guarantee" that result. Accommodations are never a guarantee of success: they are instead designed only to give disabled students a reasonable *opportunity* to pass an exam or meet other program requirements notwithstanding their disabilities.

Ultimately, regardless of whether NBOME provided him with his requested testing accommodations, Bahl had made a separate request to

NYIT to accommodate his disability with respect to its own program schedule and enrollment status. He sought from NYIT only a 180-day period of additional leave to obtain certain psychopharmacologic, cognitive behavioral, and speech therapy treatments before retaking the COMLEX 2 exam. *See* Catalano Decl., Ex. 35, at 2, ECF No. 235-41 (Aug. 28, 2013, letter from Bahl's then-counsel to NYIT). This proposal, Bahl contends, was both a necessary and reasonable accommodation of his disability *separate and apart from* whether NBOME agreed to accommodate him during the testing process itself. And whether NYIT's counter-proposal for a shorter period of leave, with an additional precondition of NBOME-provided testing accommodations, was a "plainly reasonable" accommodation of his disability is a question that *Dean* and related authorities make clear is properly resolved by a jury, not by this Court on summary judgment.

Thus, taking these facts in the light most favorable to the non-movant, genuine issues of fact remain as to whether the terms of NYIT's proposed accommodation were plainly reasonable, precluding summary judgment on this ground.

### C. Would Bahl's proposed accommodation, if reasonable, have led to an "undue hardship" or "substantial modification" for NYIT?

In cases where (as here) a defendant's accommodation was not "plainly reasonable as a matter of law," the Second Circuit has evaluated the reasonableness of a *plaintiff's* proposed accommodation under a burden-shifting framework. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 75–76 (2d Cir. 2016). A plaintiff has a "light burden" to show the facial reasonableness of his or her proposed accommodation. *Dean*, 804 F.3d at 190. A defendant then has the burden to show that the plaintiff's proposed accommodation is unreasonable. A defendant may do so by showing that the proposed accommodation would "(a) impose undue hardship on the operation of the defendant's service, program, or activity, or (b) require a fundamental or substantial modification to the nature of its academic program or standards." *Id*.

### 1. Reasonableness

First, the Court finds that Bahl has met his "light" burden to show the facial reasonableness or plausibility of his requested accommodation. Bahl sought a six-month leave for treatment designed to remedy certain deficits related to Attention Deficit Hyperactivity Disorder (ADHD), Generalized Anxiety Disorder (GAD), Deficits in Executive Function, and Speech Cluttering. *See* Catalano Decl., Ex. 35, at 2. Because these conditions "impair[ed] Bahl's] ability" to take examinations like the COMLEX 2 "in a manner which [sic] reflects his true ability," Bahl's attorney at the time requested:

> . . . a six month leave of absence . . . so that my client could ameliorate these deficits with an aggressive treatment plan of ongoing psychopharmacologic management, cognitive behavioral therapy and increasing the frequency and intensity of his speech therapy. In addition, my client also intends to increase his work with a learning specialist and he has also been enrolled in a directed course syllabus for students who have had difficulty with the COMLEX exams.

*Id.* at 3. Among other reasons, a jury could find that this was a reasonable request given Dr. Yellin's 2011 report, which noted that Bahl suffered from "Attention Deficit Disorder, Executive Function Disorder, Expressive Language Disorder, and a Reading Disorder" (even though Bahl did not request accommodations from NYIT at that time). Bahl forwarded this 2011 report to NYIT in May 2013 as additional support for his request that the school formally endorse his request for testing accommodations to NBOME.

NYIT argues that the requested accommodation would not have allowed Bahl to meet the "essential requirements" of the D.O. program (*i.e.*, passing the COMLEX 2 exam, which was required for NYIT graduation) because "additional time alone would not have been sufficient to permit him to pass the COMLEX 2 Exam." *See* Def.'s Reply 10. But a plaintiff's requested accommodation does not have to be the *only* accommodation that helps a plaintiff access a service or program: here, whether NBOME granted a testing accommodation to Bahl does not affect whether it was reasonable for Bahl to separately request a 180-day leave from NYIT for the purposes of

obtaining additional medical treatment prior to taking the examination, and additional time in which to study and otherwise prepare for it.

## 2. Substantial modification

Finding Bahl's initial burden satisfied, the Court now turns to whether NYIT has shown that the proposed accommodation would have created an undue hardship or entailed a substantial modification to the school's programs or standards. Courts "ordinarily" defer to the "professional, academic judgments of educational institutions," but decline to do so in cases where the record "is devoid of evidence" showing that an institution evaluated a potential accommodation's effectiveness and potential for undue hardship or a substantial modification. *Dean*, 804 F.3d at 191 ("To do otherwise might allow academic decisions to disguise truly discriminatory requirements.") (citation and quotation marks omitted). Here, NYIT argued that the requested six-month level would require a "substantial modification to its standards that students need to pass the COMLEX 2 Exam within a certain period of time" and was "*per se* unreasonable" due to the length of time. Def.'s Reply 11.

The record is "devoid of evidence" to support NYIT's contention, including any evidence that NYIT in fact evaluated whether a six-month leave would have entailed a substantial modification of its academic standards or programs. *See Dean*, 804 F.3d at 191; *see also Bied v. Cnty. of Rensselaer*, No. 115CV1011TJMDEP, 2018 WL 1628831, at *19 (N.D.N.Y. Mar. 30, 2018) (denying summary judgment where record failed to show that a community college "diligently assessed" whether a plaintiff's proposed scheduling alteration would allow her to complete a marketing course without imposing undue burdens or a substantial modification). At oral argument, as discussed above, NYIT's counsel did not provide any reason for the alternate proposal of approximately three months of leave rather than six that relates to NYIT's core academic programs or standards. Instead, counsel noted that the proposed period of leave ending in January 2014 may only have been offered to coincide with the end of NYIT's semester, allowing some resolution of Plaintiff's status by the end of the fall 2013 term. *See* Tr. 23:1–13 ("THE COURT: Why did the school decide it was not reasonable to give him six months[?]" "[DEFENSE COUNSEL]: . . . January 31 would, of

course, be the commencement of the new semester . . . "); *see also* Tr. 25:25–26:5 (defense counsel characterizing NYIT's reasoning as follows: "[B]ecause you are essentially no longer a student at NYIT, we'll allow you to withdraw and you can have until the end of the semester to take the test and pass.").

NYIT has not provided any other evidence, much less evidence sufficient to take the issue away from the trier of fact, that permitting Bahl to have an additional period of leave that carried over into the spring semester would require NYIT to "fundamentally alter" or "substantially modify" its programs or standards. Indeed, as Bahl points out, a six-month leave was directly in line with the school's 180-day leave policy for all students—disabled and non-disabled—who did not pass the COMLEX 2 exam on their first attempt. *See* Pl.'s 56.1 Statement ¶ 116 (undisputed that school had policy allowing all students to apply for 180-day leave to retake the COMLEX 2 exam). In light of the reasons given above by Bahl, and drawing all reasonable inferences in Bahl's favor, a reasonable factfinder could conclude that granting Bahl's requested six months would not have constituted a "substantial modification" of NYIT's programs or standards.

To be sure, a proposed accommodation can be deemed a substantial modification when the accommodation changes program standards or assessments themselves. *See Dean*, 804 F.3d at 190 (collecting cases). Some courts have considered the possible effectiveness of a proposed accommodation and the potential for such changes by looking at the "particular circumstances" of a student—namely, in circumstances like a history of disciplinary or other performance problems. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1049–51 (9th Cir. 1999) (finding that plaintiff's proposed accommodation was not reasonable where, "because Zukle was doing so poorly in the clinical portion of the clerkship, [g]iving [her] time off from the clinical portion to study for the test[ ] could not have helped, but could only have further damaged, her already marginal clinical skills"); *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992) (upholding summary judgment after a medical school, having giving a student multiple prior accommodations, concluded that changing a biochemistry test from a multiple-choice format would constitute "substantial program alterations").

NYIT attempts to analogize Bahl to a plaintiff-student with such a history from one out-of-circuit case. *See* Def. Mot. 32, 34 (citing *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454 (4th Cir. 2012)). But that case is readily distinguishable. In *Halpern*, the court found that a medical student's proposed accommodation of a "special remediation plan" that included an undefined "strict probation" period was not reasonable. *Id.* at 465–66. At the time the student proposed the plan, he had already "engaged in numerous unprofessional acts that warranted his dismissal, including acting abusively towards staff, multiple unexcused absences, repeated failure to meet deadlines, and tardiness." *Id.* at 465. The student had already delayed graduation by a year due to a medical leave, and neither he nor his medical expert could "specify a time at which his treatment would be complete." *Id.* at 466. There, the Rehabilitation Act could not "obligate" the school to allow the student to continue his program "with the hope that at some unknown time in the future he will be able to satisfy the program's essential requirements." *Id.* Yet here, notwithstanding NYIT's emphasis on problems with Bahl's prior performance in a clerkship (which, after some initial challenges, he ultimately completed) or with his first, unsuccessful attempt to pass the COMLEX 2, Bahl requested a leave for a specific, limited time of six months. Bahl made this request at a time when he had already demonstrated, in NYIT's words, an "impressive academic history," and he did so for a single, specific purpose: to pass an exam that was his only remaining graduation requirement.

In short, a reasonable factfinder could conclude that (1) the 180-day leave requested by Bahl was a reasonable proposed accommodation of his disability, and (2) granting that request would not have constituted a substantial modification of NYIT's academic standards or other fundamental changes to its program.

## IV. CONCLUSION

NYIT's motion for summary judgment is denied as to Plaintiff's failure to accommodate claims under the Rehabilitation Act and NYSHRL. Pursuant to the Court's Order dated July 12, 2023, decision on NYIT's motion for summary judgment as to the remaining claims in the Amended Complaint is reserved pending further briefing by the parties as to whether Bahl has

waived his right to oppose summary judgment on those claims.

SO ORDERED.

                                          */s/ NRM*
                                          NINA R. MORRISON
                                          United States District Judge

Dated:    July 21, 2023
             Brooklyn, New York