# SUPREME COURT - STATE OF NEW YORK

PRESENT:
### Honorable James P. McCormack
                                         Justice

---------------------------------------------------------x     TRIAL/IAS, PART 21
                                                                                              NASSAU COUNTY
**TODD REGNIER,**

                                **Plaintiff(s),**

                                                                                           **Index No.: 607431/18**

                                -against-

**NEW YORK COLLEGE OF OSTEOPATHIC**          **Motion Seq. No.: 001**
**MEDICINE OF NEW YORK INSTITUTE OF**         **Motion Submitted: 12/14/18**
**TECHNOLOGY ("NYCOM-NYIT" OR**
**"NYCOM").**                                                                 **XXX**

                                     **Defendant(s).**
---------------------------------------------------------x

The following papers read on this motion:

         Notice of Motion/Supporting Exhibits/Memorandum of Law........X
         Affirmation in Opposition/Memorandum of Law............................X
         Reply Affirmation/Memorandum of Law.........................................X[1]

Defendants, New York College of Osteopathic Medicine of New York Institute of Technology (NYIT), move this court for an Order, pursuant to CPLR § 3211(a)(1), (5) and (7) dismissing the complaint against them. Plaintiff, Todd Regnier (Regnier) opposes

---
[1] The court notes that counsel for NYIT sought oral argument on this motion. However, the issues were fully and throughly briefed by both sides, and the court found that further input from counsel on these issues would be unnecessary, obviating the need for oral argument.

t.

the motion.

Regnier commenced this action by service of a summons and complaint dated June 4, 2018. The complaint contains six causes of action, to wit: 1) Fraud in the factum, 2) Fraud in the inducement, 3) Unjust enrichment, 4) Money had and received, 5) Breach of contract, and 6) Fraud. NYIT brought this motion in lieu of an answer.

The following facts are taken from the complaint. Regnier was a medical student at NYIT. Prior to enrolling in medical school, Regnier's previous academic endeavors were highly successful from being valedictorian of his high school class to graduating *cum laude* from University of Massachusetts at Amherst. He had a number of impressive internships and conducted research in the summers of 2004 and 2005 at Weill Cornell Medical School. Regnier was accepted into NYIT for the class of 2014, commencing at the end of the summer of 2010. Though he was successful during his first few months, he soon began having trouble studying based upon the conduct of his two roommates. They were both "night owls" and loud, and one was an alcoholic. He claims their behavior caused him to fail a class in the Fall 2010-2011 semester. It was the first time he had ever failed a class. Due to the failed class, a series of meetings with the school began in attempt to address his academic progress.

From the very first of these meetings, of which there would be many, Regnier alleges he was treated by school administration including Deans, staff and counsel, in a barbaric, hostile, unfair and abusive manner. His choice of clothing was attacked, his

2

concerns were disparaged and dismissed, his requests for information and clarification were ignored, and none of his concerns were taken seriously. At the end of his first year, he failed another class. Again, he blamed his living situation and his noisy, "older, hostile roommates". He claims he was unable to change his living situation because he signed a lease. Because of the second "F", Regnier again had to meet with the Student Progress Committee and Dean Mary Achtziger. He explained to the committee about his roommates and, for the first time, explained that he had been diagnosed with a "mild" case of Apserger's Syndrome at age eight. Because of the Asperger's, he required "peace and quiet" to study. To justify this, the complaint quotes an unnamed website describing the traits of those diagnosed with Apserger's.

Though he could have been expelled for failing two classes, in June, 2011 Regnier was placed on academic probation. He was told he would have to repeat first year classes, even including ones he had passed. He would also have to pay another year's tuition. However, he also had to endure other "draconian" conditions. These included being evaluated by a psychiatrist of the school's choosing, and waiving his HIPAA rights so the committee could communicate with the psychiatrist and other medical professionals.

Around the time Regnier started seeing the psychiatrist, Dr. Sergei Belkin, he moved to Greenvale, "a quiet neighborhood down the street from" campus. Dr. Belkin prescribed Lexapro for Regnier, which caused "severe and nasty" side effects. He gained

3

40 pounds and lost the ability to ejaculate. In response, Regnier claims Dr. Belkin increased the dosage. However, now that Regnier was in a quiet apartment, he found the appointments with Dr. Belkin "inconvenient". He believed his new home would help "restore his life-long record of academic excellence".

In August, 2011, after he "reflected on his situation" Regnier determined he no longer needed to see Dr. Belkin or take Lexapro. He stopped attending his appointments, and stopped taking the medication. In September, 2011, Regnier was directed to appear before the committee. He was to face disciplinary action for failure to attend certain ceremonies. Regnier claims he was not required to attend one of the ceremonies, and did attend the other. He was also accused of "lunging" at Dean Achtziger's secretary. Regnier was "shocked, surprised and dismayed" to learn of this allegation. According to Regnier, it was the secretary who was hostile toward him and who threatened to have security remove him for no reason. He denied engaging in any behavior that could be deemed threatening. There were other charges lodged against him (which Regnier does not list in the complaint) all of which he denied.

Regnier states that the most serious matter raised by the committee was Regnier's unilateral decision to stop seeing Dr. Belkin and stop taking Lexapro. In an attempt to justify his decision, he explained to the committee that the "weekly commutes" were "time consuming and disruptive". He was afraid they would disrupt his studies. He claims his explanations were met with derision. Soon after this meeting, Regnier

received a letter from Dean Scandalis informing him he was being formally censured for failure to comply and that he was to immediately resume his sessions with Dr. Belkin.

Soon after receiving the letter, Regnier states he resumed both his sessions with Dr. Belkin and taking Lexapro, but only after he was unable to covince Dr. Belkin to discontinue the sessions and the medication. Regnier sought permission from the school to see a different psychiatrist, but this request was denied. Dean Scandalis allegedly expressed the opinion to Regnier that this request was indicative of his inability to follow direction, and cast doubt on his ability to be a doctor. Dean Scandalis also allegedly told Regnier that the school would abide by any recommendation made by Dr. Belkin.

In December, 2011, Dr. Belkin "suddenly" informed Regnier that psychiatric treatment was no longer necessary, nor was the Lexapro, but that Regnier should see a therapist. Dr. Belkin referred Regnier to Mary Rose Q. Paster, PhD. Regnier states that during his first session with Dr. Paster he "realized that Dr. Paster was receiving third party advice." Regnier beieved that Dean Achtziger was providing Dr. Paster with "misinformation" based upon Dr. Achtziger being embarrassed during the committee's last meeting at having some facts wrong. Regnier alleges that Dr. Paster told him that Dean Achtziger told Dr. Paster that Regnier lunged at a faculty member and needed therapy due to discipline problems. After three appointments with Dr. Paster, Regnier returned to Dr. Belkin and requested he discontinue the therapy appointments. Dr. Belkin

5

refused, but referred Regnier to a different psychologist, Deborah Ross.

Regnier alleges Dr. Belkin failed to inform the school that he approved the change in therapists. Once that was cleared up, Regnier "discovered" Dr. Achtziger's office was communicating with Dr. Ross. Regnier then met with Dr. Achtziger, who lectured Regnier about his attitude and his unauthorized decision to change therapists, even though it was authorized by Dr. Belkin. He continued to see Dr. Ross who allegedly told Regnier that Dean Achtziger had been making disparaging comments about Regnier to Dr. Ross. Dr. Ross allegedly stated she did not believe these comments were true. In June, 2012, Regnier went to see Dr. Belkin to again ask that therapy be discontinued. Dr. Belkin cryptically told Regnier he could not because, while Dr. Belkin thought Regnier was fine, his "boss" did not. Regnier decided to write a letter to Dr. Barbara Ross-Lee, who had replaced Dean Scandalis. In his letter, he said he did not need therapy and accused Dean Achtziger of "supplying false information about him". Dr. Ross-Lee agreed to meet with Regnier. During the meeting, she promised to review how the school disclosed certain information, and laughed about the Lexapro side-effect causing Regnier an inability to ejaculate.

In July, 2012, Dr. Belkin allegedly told Regnier he no longer needed the therapy or to take medication[2]. Soon thereafter, Regnier met with Dr. Ross-Lee who said she had received Dr. Belkin's letter and would forward it to the committee, but that the letter

---

[2]This is confusing as Regnier stated that Dr. Belkin told him to stop taking the medication in December, 2011.

6

described Regnier as "resisting" therapy. Dr. Ross-Lee showed Regnier Dr. Belkin's letter but Regnier "did not read it thoroughly".

Paragraph "89" of the complaint states: "At this Court's directive, on February 9, 2015, NYCOM provided" Regnier with Dr. Belkin's letter[3]. Though the letter expresses that Regnier had "improved" and that he was "less anxious and less depressed", it also states that he would benefit from continued therapy but that his "resistance" to it would prevent him from gaining any benefit from it. On July 20, 2012, Dr. Belkin allegedly authored another letter. This one also stated that Regnier was improved and was less anxious and depressed, but states that he no longer needs therapy and should continue with classes. However, at a committee meeting on July 23, 2012, the committee only referenced Dr. Belkin's first letter and "concealed" their knowledge of the second letter. At the time of the meeting, Regnier denies being aware of the second letter. The meeting soon devolved, and after Regnier expressed the opinion there was nothing wrong with him, a Dr. Poronova "exploded and yelled" at Regnier that he would not have his judgment questioned. By letter from Dr. Ross-Lee dated that same day, that Regnier received a few days later, Regnier was informed he had been expelled. This led Regnier to be disappointed, "stunned and emotionally distraught". He decided to express this disappointment on Facebook.

---

[3] This is clearly an error. This court has only been involved in the matter since June, 2018, and never issued such an order. However, the court is aware that Regnier initially commenced an action in Federal court, which was eventually voluntarily discontinued. It is likely paragraph "89" is referring to that court.

7

In August, 2012, Regnier met with Dr. Ross-Lee. He brought his fiancé and his mother with him to the meeting. Dr. Ross-Lee was upset about the Facebook post, while Regnier explained he turned to Facebook for "help". Regnier's mother and fiancé also both tried to explain how upsetting what happened was to them, to which Dr. Ross-Lee allegedly only offered a "smirk" and a condescending comment to his mother of "I see where he gets it from". Dr. Ross-Lee then said the school would consider his reinstatement after one year if he received treatment and could establish that his judgment had improved.

Regnier returned to Massachusetts and started to see Richard Halgin, PhD. After a few sessions, Dr. Halgin wrote a letter to Dean Bruno expressing a "positive evaluation". Dean Bruno responded with an email indicating this was "not what we asked for". Dean Bruno indicated that the school wanted Regnier to see Dr. Richard Fornari, a psychiatrist on Long Island. Regnier returned to Long Island to begin seeing Dr. Fornari. Because Dr. Fornari saw Regnier out of an office at Zucker Hillside Hospital, Regnier's former-fiance-then-wife became distraught that Regnier would be involuntarily committed. These concerns "enhanced and exacerbated" Regnier's emotional distress, leaving him in an "extraordinarily fragile and vulnerable state".

In the fall of 2012, Regnier began applying to other programs, but because he had to list his dismissal from NYIT on his applications, he was rejected from all but one. The one that accepted him, however, ended the program due to budget constraints before

Regnier started. In August, 2013, Regnier again met with Dr. Ross-Lee and was informed that he would not be accepted back into NYIT. During this discussion, Regnier alleges Dr. Ross-Lee taunted him to sue NYIT. Regnier stated he did not intend to sue and that he did not have money for an attorney. Dr. Ross-Lee then suggested he write to the school and seek a refund of his tuition.

Regnier did seek a return of his tuition which resulted in him being presented with a written settlement agreement where, in return for receiving a refund of $30,000.00 (which was approximately $18,000 less than the tuition for one year), he would sign a release, would agree to not apply for enrollment again, would agree to not disparage the school or faculty and would never disclose the terms of the agreement. Though he claims that he was at a significant and powerful disadvantage against NYIT, he also refused to sign the agreement unless they agreed to provide documentation to other medical schools that his dismissal was not academic or discipline-related, but solely due to the failure to comply with medical treatment recommendations. The release was thereafter modified to include the following language:

> 5. Upon your request, NYITCOM will provide documentation, *in accordance with NYITCOM policies*, in connection with any application to continue your education at another institution. (Emphasis added).

Dr. Ross-Lee signed the agreement on June 12, 2013 and then it was sent to Regnier. Regnier claims he spoke with Dr. Ross-Lee on June 14, 2013 and that she reiterated to

Regnier that NYIT "would provide him with all the documentation he needed to get into another medical school...". Regnier signed the document on June 21, 2013, but argues he did so in the absence of a "legitimate opportunity to negotiate" the terms of the agreement or have it reviewed by counsel.

In August, 2013, Regnier wrote to NYIT and asked them to "confirm its conditions of enrollment and explain why he had been dismissed". He claims he sought this information in writing to be able to provide to a future medical school. NYIT refused to comply. Their counsel informed him of this in writing and indicated they would comply with the terms of the settlement agreement.

Believing, among other things, he was lied to and taken advantage of, Regnier first commenced an action against NYIT in Federal Court in 2014, which he voluntarily discontinued in June, 2018. It is possible this action was commenced prior to the Federal action being dismissed.

NYIT now moves to dismiss the complaint pursuant to CPLR §3211(a)(1), (5) and (7), alleging, to wit: 1) That the documentary evidence requires dismissal of the complaint, 2) that some of the claims are time-barred and 3) that the complaint fails to state a cause of action.

A motion to dismiss a complaint based on CPLR 3211(a)(1) may be granted only where the documentary evidence utterly refutes plaintiff's factual allegations conclusively establishing a defense as a matter of law (*Gosch v Mutual Life Ins. Co.* of N.Y., 98 NY2d

314, 326 [2002]; *Bibbo v 31-30, LLC,* 105 AD3d 791, 792 [2d Dept 2013]). To be considered documentary, for the purposes of a motion to dismiss based on documentary evidence, the evidence must be unambiguous and of undisputed authenticity. Judicial records, as well as documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are "essentially undeniable," qualify as "documentary evidence" in the proper case. If the document does not reflect an out-of-court transaction, and is not essentially undeniable, it is not documentary evidence within the intendment of CPLR 3211(a)(1) (*see Fontanetta v John Doe 1*, 73 AD3d 78 [2d Dept 2010]). Neither affidavits, deposition testimony or letters are considered documentary evidence within the intendment of CPLR 3211(a)(1) (*Integrated Constr. Servs., Inc. v Scottsdale Ins. Co.*, 82 AD3d 1160, 1163 [2d Dept 2011]).

On a motion to dismiss for failure to state a cause of action pursuant to CPLR §3211 (a) (7), "the sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law[,] a motion for dismissal will fail" (*Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]; *see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Hense v Baxter*, 79 AD3d 814, 815 [2d Dept 2010]; *Sokol v Leader*, 74 AD3d 1180, 1180-1181 [2d Dept. 2010]). "The complaint must be construed liberally, the factual allegations deemed to be true, and the nonmoving party granted the benefit of every possible favorable inference" *(Hense v Baxter*, 79 AD3d 814, 815 [2d Dept 2010], *supra*;

11

*see Leon v Martinez*, 84 NY2d 83, 87 [1994], *supra*; *Sokol v Leader*, 74 AD3d 1180,1181 [2d Dept 2010], *supra*; *Breytman v Olinville Realty, LLC*, 54 AD3d 703, 703-704 [2d Dept 2008]).

In reviewing a motion to dismiss for failure to state a cause of action pursuant to CPLR § 3211(a)(7), the court is to accept all facts alleged in the complaint as being true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the alleged facts fit within any cognizable legal theory (*see Delbene v. Estes*, 52 AD3d 647 [2d Dept. 2008]; *see also 511 W.232nd Owners Corp. v. Jennifer Realty Co.*, 98 NY2D 144 [2002]. Pursuant to CPLR § 3026, the complaint is to be liberally construed (*see Leon v. Martinez*, 84 NY2d at 83). It is not the court's function to determine whether plaintiff will ultimately be successful in proving the allegations (*see Aberbach v. Biomedical Tissue Services,* 48 AD3d 716 [2d Dept 2008]; *see also EBC I, Inc. v. Goldman Sachs & Co.,* 5 NY3D 11 [2005]).

The pleaded facts, and any submissions in opposition to the motion, are accepted as true and given every favorable inference *(see 511 W. 323nd Owners Corp. v. Jennifer Realty Co.*, 98 NY2d at 151-152; *Dana v. Malco Realty, Inc.,* 51 AD3d 621 [2d Dept 2008]; *Gershon v. Goldberg*, 30 AD3d 372, 373 [2d Dept 2006]). However, a court may consider evidentiary material submitted by a defendant in support of a motion to dismiss a complaint pursuant to CPLR § 3211(a)(7) (*see* CPLR § 3211[c]; *Sokol v. Leader*, 74 AD3d at 1181). "When evidentiary material is considered" on a motion to dismiss a

12

complaint pursuant to CPLR § 3211(a)(7), the criterion is whether the plaintiff has a cause of action, not whether they have properly stated one, and unless it has been shown that a material fact as claimed is not a fact at all or that no significant dispute exists, the dismissal should not be granted (*Guggenheimer v. Ginzburg*, 43 NY2d at 275; *see Sokol v. Leader*, 74 AD3d at 1182).

Herein, regarding the First Cause of Action, Fraud in the Factum, the complaint must allege that Regnier was induced to sign a document completely different than that which he thought he was signing, and without a reasonable opportunity to know and understand the agreement's terms. (*Countrywide Home Loans, Inc. v. Gibson*, 157 AD3d 853 [2d Dept. 2018]). However, a Fraud in the Factum cause of action is generally reserved for one who is blind, illiterate or not a speaker of the language in which the document is drafted. *Id.* Clearly, Regnier is not blind, and his multiple academic successes establish he is not illiterate. Further, there is no allegation that English is not his first language. However, those issues aside, the Fraud in Factum cause of action must still be denied. Despite his numerous protestations in the complaint, Regnier cannot allege the document was "completely different" than what he thought he was signing. The agreement herein is brief and written in plain language. It could not be any clearer that the fifth paragraph conditions NYIT's responsibility to provide Regnier with documentation he seeks "in accordance" with their policies. It was Regnier's responsibility to understand what those policies were prior to signing the agreement. While he argues that he thought it meant something else, the wording makes the meaning

13

clear.

Further, he cannot claim he did not have an opportunity to know and understand the terms. There is no allegation that NYIT put a deadline on signing the agreement, and Regnier took over a week to sign it. He certainly had the time and opportunity to not only understand the terms, but seek legal advice. While he claims he could not afford to do so, he does not substantiate this assertion. It does not appear he made any attempt to hire someone to review the document, which is shorter than two pages long, and perhaps would have taken an attorney an hour, at most, to explain its meaning. Regardless, the agreement is absent of "legalese" or technical terms, and someone of Regnier's intelligence would easily understand the terms, including the "in accordance" language.

Finally, this particular clause was added to the agreement at Regnier's request. There is no explanation in the lengthy narrative in the complaint why, after refusing to sign the agreement unless it contained this language, he did not refuse again once it failed to say exactly what he wanted it to say. Therefore, the First Cause of Action will be dismissed for failure to state a claim.

The Second Cause of Action is for Fraud in the Inducement. Regnier alleges there were two misrepresentations made to him which induced him to enter into the settlement. The first was NYIT's alleged oral reassurances that when Regnier applied to other programs, NYIT's policies would allow them to provide those institutions with information indicating he was only dismissed from NYIT for failure to comply with mental health treatment recommendations. The second misrepresentation concerns Dr.

14

Belkin's two letters. Regnier alleges that NYIT misrepresented the content of the first one and the existence of the second one.

A cause of action for fraud must allege a misrepresentation of fact, by a person who knew it was untrue, made with the intent to induce the recipient to rely on the false information, justifiable reliance on the false information and damages as a result. (*Genovese v. State Farm Mut. Auto Ins. Co.*, 106 AD3d 866 [2d Dept. 2013]). However, where a cause of action for fraud is based upon the same allegations as a cause of action for breach of contract, the fraud cause of action cannot lie. *Id.* Herein, the Fifth Cause of Action is for Breach of Contract. While part of the allegations address NYIT's alleged failure to confer Regnier with a medical degree, the same cause of action also addresses the agreement and release. Paragraph 243 of the complaint states:

> In the event that this Court determines that the parties' execution of the "Release" instrument was not caused by fraud in the factum, and that said instrument was therefore not void at its inception, Plaintiff also asserts a breach of contract claim on that instrument in that he complied fully with each of his obligations thereunder, while Defendant, in contrast, breached its obligation (as memorialized in paragraph 5 of the instrument) to provide Plaintiff with the necessary documentation pertaining to the circumstances of his expulsion from NYCOM . Said breached [sic] proximately caused Plaintiff damages

In light of paragraph 243, it is clear that the fraud in the inducement cause of action is based upon the same facts as the breach of contract cause of action. Therefore, the Second Cause of Action will be dismissed for failure to state a claim.

15

FILED: NASSAU COUNTY CLERK 02/07/2019 04:13 PM
NYSCEF DOC. NO. 13
INDEX NO. 607431/2018
RECEIVED NYSCEF: 02/07/2019
Case 2:14-cv-04020-DC-LGD   Document 276-2   Filed 06/11/24   Page 16 of 20 PageID #: 3688

The Third Cause of Action for Unjust Enrichment alleges that NYIT was unjustly enriched when Regnier paid his tuition but the school did not confer a degree upon him. NYIT argues that this cause of action is challenging the school's decision to dismiss him, and therefore is subject to the four month statute of limitations under Article 78 proceedings. In support of this argument, NYIT cites to a number of cases, including *Kickertz v. New York Univ.*, 110 AD3d 268 [1st Dept. 2013]), which is exactly on point. In *Kickertz*, a student was dismissed from NYU's dental program, and then sued the school. The student alleged, *inter alia*, unjust enrichment, based upon her paying tuition and NYU's failure to confer a degree upon her. The court found that to the extent that the unjust enrichment cause of action challenged the dismissal, it had to be brought as an Art. 78[4]. *Id.* This court finds the same rule applies herein. The unjust enrichment cause of action is a challenge to Regnier's dismissal, and should have been brought as an Art. 78. However, it is clear the statute of limitations has run for an Art. 78, thereby precluding Regnier from pursuing this claim. As such, the Third Cause of Action will be dismissed as time-barred pursuant to CPLR §3211(a)(5). The Fourth Cause of Action, for Money Had and Received, is also a challenge to Regnier's expulsion from the program, and will be dismissed for the same reasons.

The Fifth Cause of Action is for Breach of Contract, wherein Regnier makes two distinct breach of contract allegations. The first claims that NYIT breached its contract to

---

[4] The *Kickertz* court allowed the student to re-plead the unjust enrichment cause of action based upon other facts not related to the student's dismissal.

educate Regnier and provide him with a degree. As discussed, *supra*, such allegations are rooted in the school's dismissal of Regnier, and therefore should have been brought pursuant to an Art. 78. As Regnier is now time-barred from pursuing an Art. 78, these allegations must be dismissed.

The second set of allegations involve NYIT's alleged breach of the settlement agreement. A cause of action for breach of contract requires a showing of a contract, that the plaintiff performed under the contract, that the defendant breached the terms of the contract and that the plaintiff suffered damages as a result of the breach. (*Junger v. John V. Dinan Assoc. Inc.*, 164 AD3d 1428 [2d Dept 2018]). The crux of Regnier's argument is that NYIT breached its contractual obligations when it did not provide Regnier with the information he needed to gain entrance into a different medical programs. As is detailed in the complaint, Regnier claims that Dr. Ross-Lee promised him, prior to his execution of the contract, that NYIT's policies would allow them to provide other institutions with information indicating that Regnier was dismissed for failure to comply with medical treatment recommendations. However, this is not borne out in the complaint:

> 144. Thereafter, on or about June 14, 2013, Plaintiff spoke to Dr. Ross-Lee about the draft agreement. During this conversation, Dr. Ross-Lee reiterated that NYCOM would provide him with all the documentation he needed to get into another medical school-and that that promise was reflected clearly (in paragraph 5) in the agreement.
>
> 145. Several weeks earlier, Dr. Ross-Lee and Dr. Gilliar had similarly promised Plaintiff support in helping him get into another medical or graduate school.

17

> 146. Had Plaintiff known that NYCOM had no intention of providing him with the documentation of the peculiar (and fraudulent) nature and reasons for Plaintiff's expulsion from NYCOM, he never would have signed that instrument.

Even accepting every allegation in the complaint as true, Regnier's own wording calls into question whether NYIT breached the agreement. While Regnier's belief may have been he needed documentation indicating he was dismissed for failure to comply with medical treatment, his complaint merely indicates that Dr. Ross-Lee stated she would provide documentation he needed "to get into" another medical school. It does not state anywhere in the complaint if Dr. Ross-Lee, or anyone else at the school, defined what they believed those documents to be. It is clear what Regnier thought them to be, but there is no proof that NYIT promised to provide those exact documents. As a result, the court finds Regnier is unable to establish the necessary element that NYIT breached their contractual obligations. Therefore, the Fifth Cause of Action will be dismissed for both being time-barred and failure to state a claim.

Finally, the Sixth Cause of Action is another allegation of fraud. As discussed, *supra*, Regnier must assert a misrepresentation of fact, by a person who knew it was untrue, made with the intent to induce the recipient to rely on the false information, justifiable reliance on the false information and damages as a result. (*Genovese v. State Farm Mut. Auto Ins. Co., supra*). Regnier alleges he would not have entered into the release but for being told "falsehoods" and having the truth "concealed" from him. As for damages, he seeks the difference between the amount he received and the reasonable

value of his claims. To support these allegations, Regnier refers to paragraphs 153-211 of the complaint. Paragraphs 153-162 address a request Regnier made of NYIT, post-settlement, "to confirm its conditions of enrollment and explain why he had been dismissed" in writing. He alleges he needed this information to show future schools why he had been dismissed. When NYIT did not comply with his request, he deemed it a violation of the settlement agreement. Paragraphs 163-206 are the allegations for the First Cause of Action. Paragraphs 207-211 are some, but not all, of the allegations for the Second Cause of Action. It is not clear to the court the purpose of including paragraphs 163-211 in the Sixth Cause of Action.

The court finds the Sixth Cause of Action does not make out a viable cause of action for fraud. Even if it is true that NYIT's failure to provide the information Regnier sought in paragraphs 153-162 of the complaint was a breach of the settlement agreement, and the court finds it is not, it would still not amount to fraud. At best, it is breach of contract and this court has already determined Regnier has failed to make out such a cause of action. All of the other allegations of "falsehoods", "false representations", information being "concealed", "acts and omissions", and other general terms are too vague to support a cause of action for fraud. CPLR §3016(b).

Accordingly, it is hereby

**ORDERED**, that Defendants' motion to dismiss the complaint pursuant to CPLR §§3211(a)(1), (5) and (7) is GRANTED. The complaint is dismissed.

The court has considered the parties' remaining arguments and finds them to be

without merit.

    The foregoing constitutes the Decision and Order of the Court.

Dated:  February 6, 2019
         Mineola, N.Y.

_____
Hon. James P. McCormack, J. S. C.

**ENTERED**
FEB 0 7 2019
NASSAU COUNTY
COUNTY CLERK'S OFFICE